# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETWORK PROTECTION SCIENCES, LLC, ) ) ) | |
| ) Plaintiff, ) ) | Civil Action No. 2:10-CV-224-TJW-CE |
| v. ) ) | JURY TRIAL DEMANDED |
| JUNIPER NETWORKS, INC., FORTINET, INC., WATCHGUARD TECHNOLOGIES, INC., SONICWALL, INC., AND DEEP NINES, INC. ) ) ) ) ) | |
| Defendants. ) ) | |

## DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

2343600

**TABLE OF CONTENTS**

**Page**

I. BACKGROUND ................................................................................................................1

II. PLAINTIFF'S CLAIMS COULD HAVE BEEN BROUGHT IN THE
    NORTHERN DISTRICT OF CALIFORNIA .......................................................................5

III. THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY
     THE MORE CONVENIENT VENUE ...............................................................................7

    A.   All Private Interest Factors Weigh in Favor of Transfer ...........................7

         1.   Relative Ease of Access to Sources of Proof.................................7

         2.   Availability of Compulsory Process to Secure Attendance
              of Witnesses...................................................................................9

         3.   Cost of Attendance for Willing Witnesses .................................10

    B.   All Public Interest Factors Weigh in Favor of Transfer
         or Are Neutral ...........................................................................................11

         1.   Administrative Difficulties Flowing From
              Court Congestion.........................................................................11

         2.   Local Interest in Having Localized Interests
              Decided at Home .........................................................................11

         3.   Familiarity of the Forum with the Law That Will
              Govern the Case ..........................................................................13

         4.   Avoidance of Unnecessary Problems of Conflict of Laws .........13

    C.   Balancing of Private and Public Factors Favors Transfer .......................13

IV. CONCLUSION ................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Ennova Direct, Inc. v. LG Elecs. U.S.A., Inc.*,
    2:08-cv-0022-CE, slip op. (E.D. Tex. Mar. 31, 2010) ................................................. 8

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*,
    103 F.3d 888 (9th Cir. 1997) ....................................................................................... 6

*In re Acer Am. Corp.*,
    --- F.3d ---, 2010 WL 4911307 (Fed. Cir. Dec. 3, 2010) .................................. 8, 9, 13

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ........................................................................ 7, 8, 11

*In re Microsoft Corp.*,
    --- F.3d ---, 2011 WL 30771 (Fed. Cir. Jan. 5, 2011) ............................................... 12

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2009) ............................................................................ passim

*In re Volkswagen AG*,
    371 F.3d 201, 204-205 (5th Cir. 2004) ..................................................................... 10

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ................................................................................ passim

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010) ................................................................................. 12

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .................................................................................................... 6

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) ................................................................................... 13

*Northpeak Wireless, LLC v. 3Com Corp.*,
    No. CV-08-J-1813-NE, slip op. (N.D. Ala. Jan. 21, 2009) ......................................... 6

*Software Rights Archive, LLC v. Google Inc.*,
    2010 WL 2950351 (E.D. Tex. July 22, 2010) .......................................................... 11

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
    2010 WL 2771842 (E.D. Tex. July 13, 2010) ............................................................ 6

## TABLE OF AUTHORITIES

**Page**

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990) ................................................................................... 5

**Statutes**

28 U.S.C. § 1391(c) ................................................................................................... 5, 6

28 U.S.C. § 1400(b) ................................................................................................... 5, 6

28 U.S.C. § 1404(a) ................................................................................................. passim

**Rules**

Rule 45(c)(3)(A)(ii) ......................................................................................................... 9

All the defendants – Juniper Networks, Inc. ("Juniper"), Fortinet, Inc. ("Fortinet"), WatchGuard Technologies, Inc. ("WatchGuard"), SonicWALL, Inc. ("SonicWALL"), and Deep Nines, Inc. ("Deep Nines") (collectively, "Defendants") – jointly move to transfer this case to the Northern District of California, a venue that is clearly more convenient than the Eastern District of Texas. Most of the parties and virtually all of the relevant witnesses and evidence in this case are located in the Northern District of California. By contrast, nothing material to this patent infringement suit is even remotely linked to the Eastern District of Texas. No defendant is incorporated or headquartered in this District, and nearly all key events, parties, documents, and witnesses are associated with one state – California. Even the key personnel of plaintiff Network Protection Sciences, LLC ("NPS" or "Plaintiff") are located in California. Accordingly, Defendants respectfully request that the Court transfer this case to the Northern District of California for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a).

## I.   BACKGROUND

### A.   Factual Background

NPS is a non-practicing patent-holding entity with a single managing member, Unifi Scientific Advances, Inc. ("Unifi"). NPS and Unifi were incorporated and registered as Texas limited liability companies shortly before this case was filed – Unifi on January 11, 2010, and NPS on April 6, 2010. *See* Ex.[1] 1 (NPS registration papers); Ex. 2 (Unifi registration papers). The only connections either NPS or Unifi appears to have in Texas are its organizer and registered agent, Michael C. Coker (an attorney in Tyler, Texas), a purported office in Longview, Texas, and a single part-time employee. *See* Ex. 1; Ex. 2; Ex. 3 (12/31/10 ltr. from Dixon to Cukor) at 1. NPS appears to have no independent existence from Unifi – they share a purported office in Longview, Texas – or Unifi's two managers, Rakesh Ramde (who is also the President of NPS) and Wilfred Lam, who both reside in the Northern District of California. *See* Ex. 1

---

[1] "Ex __" refers to the exhibits attached to the Declaration of Douglas J. Dixon in Support of Defendants' Motion to Transfer Venue to the Northern District of California, executed January 12, 2011.

(listing address for NPS and Unifi as 3301 W. Marshall Ave., Ste. 302, Longview, Texas); Ex. 2 (providing addresses for Messrs. Ramde and Lam in Mountain View, California).  Indeed, NPS appears to be little more than a collection of papers and computer files in Messrs. Ramde and Lam's offices in Mountain View, California.[2]

Defendants similarly lack any meaningful connection to the Eastern District of Texas.  None are headquartered in this District or incorporated in Texas.  None of Defendants' accused products were designed in this District.  And none of Defendants' employees with knowledge relevant to this case, such as engineers involved in the design of the accused firewalls, reside in this District.  In fact, most of the defendants are headquartered in the Northern District of California, designed the majority of the accused products in the Northern District of California, and have the majority of their employees with any knowledge relevant to this case in the Northern District of California.  Indeed, virtually all the relevant witnesses and sources of proof for Defendants are located in the Northern District of California.  Specifically:

Juniper is a Delaware corporation with its principal place of business in Sunnyvale, California (within the Northern District of California).  Gadde Decl.[3] ¶ 2.  The vast majority of its development, technical, and marketing documents, as well as the source code for the likely products at issue in this case, are stored at its headquarters in Sunnyvale, and the firewall products at issue in this case were researched, designed, developed, and tested there.  *Id.* ¶ 3.  The majority of Juniper's employees who are involved in firewall product development are located in Northern California.  *Id.* ¶ 4.  All decisions regarding marketing, sales, and pricing of any allegedly infringing products would have occurred predominantly in the Northern District of California.  *Id.* ¶¶ 2-4.

---

[2] Ramde and Lam are also managers of Innovation Management Sciences, LLC, an intellectual property investment and management firm located in the Northern District of California.  *See* Ex. 4 (Corporate filing for Innovation Management Sciences, LLC).

[3] "Gadde Decl." refers to the Declaration of Vijaya Gadde in Support of Defendants' Motion to Transfer Venue to the Northern District of California, executed January 10, 2011.

2343600

Fortinet is a Delaware corporation with its principal place of business also in Sunnyvale, California.  Nelson Decl.[4] ¶ 2.  The vast majority of its development, technical, and marketing documents, as well as the source code for the likely products at issue in this case are accessible at its headquarters in Sunnyvale, where the products were researched, designed, developed, and tested.  Id. ¶¶ 3-4.  The bulk of Fortinet's senior management, including Fortinet's Chief Technology Officer, Michael Xie (specifically named in the complaint), together with a large percentage of Fortinet's technical employees that are involved in the development and distribution of its firewall products, are located in Northern California.  Id. ¶¶ 5-6. All decisions regarding marketing, sales, and pricing of any such allegedly infringing products would have occurred predominantly in the Northern District of California.  Id. ¶ 6.

SonicWALL is a Delaware corporation, with its principal place of business at 2001 Logic Drive, San Jose, California (also in the Northern District of California).  See Buckner Decl.[5] ¶ 5. The vast majority of its development, technical, and marketing documents, as well as the source code for the likely products at issue in this case, are stored at its headquarters in Northern California, where the products at issue were developed.  Id. ¶ 5.  The majority of SonicWALL's employees who develop its firewall products are located in Northern California, as are its senior management personnel.  Id. ¶ 4.  All decisions regarding marketing, sales, and pricing of allegedly infringing products would have occurred predominantly in the Northern District of California.  Id. ¶ 5.

WatchGuard is a Washington corporation and is headquartered in Seattle, Washington. Zirschky Decl.[6] ¶ 4.  Most of WatchGuard's employees with knowledge relevant to this action reside in Washington state.  Id. ¶¶ 4-5.  WatchGuard also has several facilities in California, and

---

[4] "Nelson Decl." refers to the Declaration of Todd Nelson in Support of Defendants' Motion to Transfer Venue to the Northern District of California, executed December 29, 2010.

[5] "Buckner Decl." refers to the Declaration of Laurel Buckner in Support of Defendants' Motion to Transfer Venue to the Northern District of California, executed January 5, 2011.

[6] "Zirschky Decl." refers to the Declaration of Stephen L. Zirschky, executed December 16, 2010.

several California employees have personal knowledge of the development and capabilities of the accused WatchGuard products. *Id.* Of course, all the evidence and witnesses located in Seattle are considerably closer to Northern California than to Marshall, Texas, and the time to travel between Northern California and Seattle is a fraction of the time it takes to reach Marshall from WatchGuard's home city.

Deep Nines is headquartered in the Northern District of Texas (in Dallas); however its Research and Development and Business Development headquarters are located in the Northern District of California. Jackson Decl.[7] ¶¶ 2-6. The vast majority of its development, technical, and marketing documents, as well as the source code for the likely products at issue in this case are only accessible at its facilities in the Northern District of California. *Id.* ¶¶ 4-5. In addition, virtually all of Deep Nines' potential witnesses regarding the development and distribution of its firewall products are in Northern California. *Id.* ¶ 6.

Even the patent-in-suit, U.S. Patent No. 5,623,601 ("the '601 patent") – which relates to the computer network security technology known as "firewall" technology – has ties to the Northern District of California. Although the inventor of the '601 patent, Hung Vu, resides in Canada, as did Milkyway Networks Corp., the company to which he originally assigned the invention, there is evidence suggesting that the claimed inventions may have been conceived or derived at least in part from source code developed in California. *See* Ex. 5 (the '601 patent); Ex. 6 (the '601 patent Pros. Hist., Appx. A) (suggesting that relevant source code was developed at the University of California, Berkeley). The patent was subsequently assigned to various other Canadian corporations before being assigned to Mount Hamilton Partners, LLC, in 2006. *See* Ex. 7 (Patent Assignment). Mount Hamilton Partners is a technology investment and patent acquisition firm headquartered in the Northern District of California. *Id.* By contrast, the patent-in-suit has no apparent ties to the Eastern District of Texas.

---

[7] "Jackson Decl." refers to the Declaration of Greg Jackson in Support of Defendants' Motion to Transfer Venue to the Northern District of California, executed December 22, 2010.

### B.     Procedural Background

NPS filed its complaint against Defendants on July 6, 2010. Since then, Defendants have filed answers and asserted counterclaims, and NPS has replied to Defendants' counterclaims. Other than that, no substantive action has taken place in this action. The Court has not set a date for the initial scheduling conference. The parties have not exchanged initial disclosures. No trial date has been set, and the parties have not begun discovery.

## II.    PLAINTIFF'S CLAIMS COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA

The threshold question at the outset of any § 1404(a) analysis is "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*") (quoting 28 U.S.C. § 1404(a)).

The Northern District of California would be able to exercise personal jurisdiction over all Defendants, and venue in that district would be proper. "A civil action for patent infringement may be brought in the judicial district where the defendant resides . . . ." 28 U.S.C. § 1400(b). A defendant corporation is deemed to reside in "any judicial district in which it is subject to jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Consequently, for corporate defendants, the test for proper venue under § 1400(b) is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990) (Section 1400(b) incorporates the requirements of Section 1391(c) for corporate defendants). That test is easily satisfied for each of the defendants.

Juniper, Fortinet, and SonicWALL all are corporate defendants that are headquartered, conduct regular business, and employ hundreds of employees in the Northern District of California. *See* Gadde Decl. ¶ 2; Nelson Decl. ¶¶ 2, 5-6 ; Buckner Decl. ¶¶ 2-3. Thus, Juniper, Fortinet, and SonicWALL can be deemed to reside in the Northern District of California, and are clearly subject to suit in that District.

The Northern District of California is also a proper forum for Plaintiff's claims against WatchGuard and Deep Nines. Because the California long-arm statute is co-extensive with the limits of federal due process, the personal jurisdiction inquiry here collapses into the single question of whether the exercise of jurisdiction comports with due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops*., 103 F.3d 888, 893 (9th Cir. 1997). Thus, the inquiry is whether WatchGuard and Deep Nines have the requisite "minimum contacts" with California, and more specifically with the Northern District of California. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Both Deep Nines and WatchGuard are subject to at least specific jurisdiction in California because (1) both have purposely availed themselves of the privilege of doing business in California through sales and other activities in the Northern District of California, (2) Plaintiff's claim arises out of the sale of allegedly infringing products that were sold in the Northern District of California, and (3) the exercise of jurisdiction over Deep Nines and WatchGuard would be reasonable. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 2771842, *6 (E.D. Tex. July 13, 2010) (finding minimum contacts with the Northern District of California because it was foreseeable that accused products in a patent infringement case would end up in California). Deep Nines maintains a research and development headquarters in the Northern District of California, where its accused products are developed. *See* Jackson Decl. ¶¶ 3-6. It also ships, distributes, and sells its products in California, including in the Northern District of California. *Id.* 7. WatchGuard also ships, distributes, and sells its accused firewall products in the Northern District of California. *Id.* ¶ 3.

These minimum contacts clearly satisfy the requirements for subjecting Defendants to personal jurisdiction in California and to venue in the Northern District of California.[8] Consequently, the threshold for a § 1404(a) transfer is easily satisfied in this case.

---

[8] This conclusion is corroborated by the fact that at least one other patent infringement suit against WatchGuard has been transferred to the Northern District of California; the court in that case must have found that WatchGuard was subject to suit in that District before ordering the transfer from the Northern District of Alabama. *See Northpeak Wireless, LLC v. 3Com Corp.*, No. CV-08-J-1813-NE, slip op. (Ex. 10) (N.D. Ala. Jan. 21, 2009).

## III. THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY THE MORE CONVENIENT VENUE

Evaluation of "convenience" under § 1404(a) involves consideration of a number of factors relating to both the private and public interest.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Volkswagen II*, 545 F.3d at 315 (internal citations and quotations omitted). Each of these factors, which we address in turn below, weighs in favor of transfer or is at minimum neutral.

### A. All Private Interest Factors Weigh in Favor of Transfer

#### 1. *Relative Ease of Access to Sources of Proof*

Because the vast majority of evidence relevant to this case is located in the Northern District of California, and none is in this District, ease of access to sources of proof strongly favors transfer. As the Fifth Circuit explained in *Volkswagen II*, notwithstanding modern technology and the ability of parties to transport documents to various locations, ease of access to sources of proof remains a "meaningful factor" in the § 1404(a) analysis. *Volkswagen II*, 545 F.3d at 316; *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2009) (holding that the trial court erred in determining that this factor was neutral on the basis that many of the documents were stored electronically when all the physical evidence was more conveniently located near the transferee venue). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotations omitted).

Here, the vast majority of documents relating to the development, manufacturing, and marketing of Defendants' firewall products are generated or maintained in their various

headquarters and Research and Development centers located in the Northern District of California. *See* Part I(A) *supra*. Most relevant documents for Juniper, Fortinet, and SonicWALL are located at their headquarters in the Northern District of California. *See* Gadde Decl. ¶ 3; Nelson Decl. ¶ 3; Buckner Decl. ¶ 5. For Deep Nines, a majority of relevant documents are located at its Research and Development and Business Development headquarters in the Northern District of California.[9] *See* Jackson Decl. ¶¶ 3-4. WatchGuard's documents are located primarily at its headquarters in Seattle, Washington, or at its Tustin, California office, and none of its relevant documents are in Texas. *See* Zirschky Decl. ¶ 6. Similarly, the source code for the accused products (which the parties maintain under very tight security) is maintained at the parties' respective offices in the Northern District of California (Juniper, SonicWALL, Deep Nines and Fortinet) or in Seattle, Washington (WatchGuard). *See* Gadde Decl. ¶ 6; Buckner Decl. ¶ 5; Jackson Decl. ¶ 5; Nelson Decl. ¶ 4; Zirschky Decl. ¶ 6. By contrast, none of the defendants has potentially relevant documents or evidence in the Eastern District of Texas. *See* Gadde Decl. ¶ 5; Buckner Decl. ¶ 5; Jackson Decl. ¶¶ 4, 6, 8; Nelson Decl. ¶ 8; Zirschky Decl. ¶ 6. Additionally, because NPS appears to be "operated" out of the California offices of Messrs. Ramde and Lam, whatever relevant documents NPS possesses are also likely to be located in the Northern District of California.

Given that most of the documents and physical evidence relating to this case are located in the Northern District of California, the "ease of access to sources of proof" factor tilts sharply in favor of transfer to that District. *See Genentech*, 566 F.3d at 1345-46 (holding that this factor

---

[9] Even if some Deep Nines documents or witnesses were located in Dallas, that would not be sufficient to overcome the compelling evidence that this action should be transferred. *See In re Acer Am. Corp.*, --- F.3d ---, 2010 WL 4911307, at *2 (Fed. Cir. Dec. 3, 2010) ("[I]t is unreasonable to suggest that Dell's evidence [in Texas, but not in the Eastern District] alone could outweigh the convenience of having the evidence from multiple defendants located within the [Northern District of California]."); *Ennova Direct, Inc. v. LG Elecs. U.S.A., Inc.*, 2:08-cv-0022-CE, slip op. (Ex. 9) at *2 (E.D. Tex. Mar. 31, 2010) (ordering transfer to the Northern District of California when most sources of proof were in or around the Northern District of California and none in the Eastern District of Texas, even though some witnesses were identified in Texas).

favored transfer to the Northern District of California where the defendants' evidence was in California and no evidence was in the Eastern District of Texas).

2.  *Availability of Compulsory Process to Secure Attendance of Witnesses*

The Northern District of California's ability to compel testimony through subpoena power also favors transfer.[10]  At this early stage of the case, it appears that some third-party witnesses with relevant knowledge might reside in the Northern District of California.  For example, the file history of the '601 patent shows that the purported invention was based heavily on computer source code developed in California.  *See* Ex. 6.  The source code prominently bears the copyright of the "Regents of the University of California" and notes that the software was developed at the University of California, Berkeley, which is located in the Northern District of California.  *Id.*  The extent to which the purported invention was a trivial or obvious variation of technology already developed at the University of California will be an important topic of discovery and testimony at trial, thus implicating third-party discovery practice in the Northern District of California.[11]  By contrast, Defendants are not aware of any witnesses in the Eastern District of Texas with knowledge relevant to this case.[12]  Therefore, this factor weighs in favor of transfer.  *See In re Acer*, 2010 WL 4911307, at *2 (ordering transfer from the Eastern District of Texas to the Northern District of California because the location of multiple defendants in California made "the subpoena powers of the Northern District of California" potentially "invaluable").

---

[10]  Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work, reside or regularly transact business more than 100 miles from the courthouse.

[11]  As the '601 patent itself explains, Vu's modification of the Berkeley UNIX source code is "critical" to Vu's invention.  *See* Ex. 5 at 10:19-24 (referring to "[t]his critical modification of the [Berkeley] operating system kernel," which is presented in Appendix A).

[12]  The sole inventor of the '601 patent, Mr. Vu, lives in Canada.  *See* Ex. 5.  Mr. Vu's location does not weigh in favor of maintaining this case in the Eastern District of Texas as opposed to transferring it to California.

### 3. *Cost of Attendance for Willing Witnesses*

The cost of attendance for willing witnesses also strongly favors transfer. As noted above, almost all party witnesses reside in the Northern District of California. Specifically, nearly all of Juniper's, Fortinet's, and SonicWALL's management and technical witnesses reside in the Northern District of California, where the companies are headquartered. *See* Gadde Decl. ¶ 4; Nelson Decl. ¶¶ 5-6; Buckner Decl. ¶ 4. Similarly, almost all of Deep Nines' relevant witnesses reside in the Northern District of California, where the company maintains its Research and Development and Business Development headquarters. *See* Jackson Decl. ¶ 6. It would also be more convenient and inexpensive for WatchGuard to bring its witnesses to the Northern District of California from Seattle or Tustin, California, than to the Eastern District of Texas, which is about 1,500 miles farther from Seattle than Northern California. *See, e.g.*, *TS Tech*, 551 F.3d at 1320 (holding that it was error not to "considerably weigh" the additional 900 miles witnesses would need to travel to attend trial in the Eastern District of Texas). Similarly, NPS appears to have no relevant witnesses in Texas, and its principals, like so many of Defendants' relevant witnesses, reside in the Northern District of California.

In contrast, Defendants are not aware of any potential witnesses located in the Eastern District of Texas. *See* Gadde Decl. ¶¶ 4-5; Buckner Decl. ¶¶ 3-4; Jackson Decl. ¶¶ 6, 8; Nelson Decl. ¶¶ 5-6, 8; Zirschky Decl. ¶¶ 4-6. Therefore, if this case remains in the Eastern District of Texas, all witnesses would likely have to travel a substantial distance to testify at trial – not just the few who might live outside the Northern District of California (as the case would be in the event of a transfer).

Thus, a transfer would significantly minimize the travel costs and productivity losses for willing witnesses from both sides. As the Fifth Circuit has recognized, "[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317 (quoting *In re Volkswagen AG*, 371 F.3d 201, 204-205 (5th Cir. 2004)

("*Volkswagen I*")); *id.* (stating costs involved in litigating away from home consist of both "monetary costs" and the "personal costs associated with being away from work, family, and community").

In sum, the cost of attendance for willing witnesses also weighs heavily in favor of transfer. *See Genentech*, 566 F.3d at 1345 ("Because a substantial number of material witnesses reside within [the Northern District of California] and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer.")

### B. All Public Interest Factors Weigh in Favor of Transfer or Are Neutral

#### 1. *Administrative Difficulties Flowing From Court Congestion*

Transfer of this case to the Northern District of California presents no administrative difficulties flowing from court congestion. The median time to trial in the Northern District of California is 26.2 months. *See* Ex. 8 (Administrative Office of the United States Courts, 2009 Annual Report of the Director: Judicial Business of the United States Courts, Table C-5). The median time to trial in the Eastern District of Texas is 25.2 months. *Id.* As a result, this is not a situation where the case is being transferred from a less congested to a more congested docket.

More importantly, the date of the initial scheduling conference in this case has yet to be set. Consequently, no trial date exists and no discovery has been taken. Indeed, this case is still in its earliest stages and could be transferred without delaying the proceedings. Therefore, this factor is at least neutral. *See Software Rights Archive, LLC v. Google, Inc.*, 2010 WL 2950351, at *4 (E.D. Tex. July 22, 2010) (recognizing that "both [the Eastern District of Texas] and the Northern District of California can efficiently handle" the patent case at issue).

#### 2. *Local Interest in Having Localized Interests Decided at Home*

The Northern District of California has a strong interest in the outcome of this case, and the Eastern District of Texas's interest is minimal. Where "the vast majority of identified witnesses, evidence, and events" are located in the transferee venue, this factor favors transfer. *TS Tech*, 551 F.3d at 1321. As explained earlier, Defendants are unaware of any evidence or

possible witness in the Eastern District of Texas. *See* Part III(A)(3) *supra*. Boiled down to basics, there are no interests affected by this case that are local to the Eastern District of Texas.

Plaintiff's only ties to this District appear to be its registration as a Texas limited liability company on April 6, 2010 – a short three months before commencing this lawsuit – its recent establishment of a purported place of business within this District, and its decision to file suit here. The Federal Circuit has held that a recent establishment of a principal place of business within the Eastern District of Texas or recent incorporation in Texas in anticipation of litigation does not create a local interest that weighs against transfer. *In re Microsoft Corp.*, --- F.3d ---, 2011 WL 30771, at *3-*4 (Fed. Cir. Jan. 5, 2011) (holding that the act of incorporating in Texas "sixteen days before filing suit" is "no more meaningful, and no less in anticipation of litigation," than moving relevant documents to an office in Texas staffed with no employees). Plaintiff's minimal presence in Texas is "recent, ephemeral, and an artifact of litigation," and thus is not entitled to deference. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) ("This is a classic case where the plaintiff is attempting to game the system by artificially seeking to establish venue by sharing office space with another of the trial counsel's clients."). Finally, Plaintiff's decision to file suit in the Eastern District of Texas is not an independent factor to be considered in the transfer analysis. *TS Tech*, 551 F.3d at 1320.

The only other conceivable tie to this District is the fact that the defendants sold within this District products that are offered for sale nationwide. However, this nationwide sale of accused products is an interest that "could apply virtually to any judicial district or division in the United States," and does not give rise to a local interest within this District. *Volkswagen II*, 545 F.3d at 318; *see also TS Tech*, 551 F.3d at 1322 (observing that products "sold throughout the United States" confer "no more or less of a meaningful connection" to one venue over any other).

In contrast, the Northern District of California has a substantial interest in the outcome of this litigation. For example, as stated above, Juniper, Fortinet, SonicWALL, and Deep Nines developed the accused products in the Northern District of California, and their witnesses and

sources of proof are located in that district. *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 905 (Fed. Cir. 2008) (holding that the Northern District of California is the "more appropriate forum," in part, because the defendant's U.S. operations are based there).

In sum, while the Eastern District of Texas has no localized interest in this dispute, the Northern District of California's strong interest in this case weighs in favor of transfer.

### 3.  *Familiarity of the Forum with the Law That Will Govern the Case*

Both the Northern District of California and the Eastern District of Texas are well acquainted with patent cases. This factor is neutral as to transfer. *See TS Tech*, 551 F.3d at 1320 (noting that "patent claims are governed by federal law, and as such both [the transferee and transferor] courts are capable of applying patent law to infringement claims").

### 4.  *Avoidance of Unnecessary Problems of Conflict of Laws*

There are no problems of conflict of laws in this case. This factor is neutral as well.

## C.  Balancing of Private and Public Factors Favors Transfer

In this case, "the convenience of the parties and witnesses, the sources of proof, the local interest, and the compulsory process factors all significantly favor transfer. Meanwhile, no factor remotely favors keeping this case in the Eastern District of Texas." *In re Acer*, 2010 WL 491307, at *3. Under these facts, the § 1404(a) balancing analysis necessarily leads to the conclusion that the Northern District of California is "clearly more convenient."

- 14 -

## IV. <u>CONCLUSION</u>

The transfer question in this case is not a close one.  All the relevant considerations regarding convenience point to one place:  the Northern District of California.  For the foregoing reasons, Defendants respectfully request that the Court grant this motion to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated:  January 12, 2011             Respectfully submitted,

By:  /s/ *Douglas J. Dixon*
David C. McPhie (*pro hac vice*)
(dmcphie@irell.com)
Douglas J. Dixon (*pro hac vice*)
(ddixon@irell.com)
**IRELL & MANELLA LLP**
840 Newport Center Dr., Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

Melissa Richards Smith
Texas State Bar No. 24001351
(melissa@gillamsmithlaw.com)
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Defendant Juniper Networks, Inc.*

2343600

## **CERTIFICATE OF SERVICE**

   I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of the foregoing via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any counsel of record will also be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated: January 12, 2011

                  By: /s/ *Douglas J. Dixon*
                       Douglas J. Dixon


## **CERTIFICATE OF CONFERENCE**

   Pursuant to Local Rule CV-7(h) and Rule 37(a)(1) of the Federal Rules of Civil Procedure, I, Douglas J. Dixon, counsel for Juniper Networks, Inc., certify that I conferred with Michael Cukor, counsel for plaintiff Network Protection Sciences, LLC, regarding this motion, on behalf of all Defendants joining in the motion, on December 30, 2010, regarding the subject of this motion to transfer venue; that, in a subsequent communication on January 5, 2011, Mr. Cukor refused to transfer this case to the Northern District of California; and that discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

Dated: January 12, 2011

                  By: /s/ *Douglas J. Dixon*
                      Douglas J. Dixon