**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| NETWORK PROTECTION SCIENCES, LLC, | ) | Civil Action No.:  2:10-CV-224-TJW-CE |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| JUNIPER NETWORKS, INC., FORTINET, INC., WATCHGUARD TECHNOLOGIES, INC., SONICWALL, INC. AND DEEP NINES, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' REPLY TO NPS' OPPOSITION TO DEFENDANTS' MOTION TO
TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

NPS applies the wrong legal standard in its opposition to Defendants' transfer motion. The relevant question is not whether NPS can successfully scour the Internet for *any* contacts between Defendants and the state of Texas.  Rather, transfer is "[f]or the *convenience* of parties and witnesses."  28 U.S.C. § 1404 (emphasis added).  Here, the Northern District of California is clearly more convenient because the vast majority of parties, witnesses, documents, and evidence are located in the Northern District of California.  Indeed, essentially every factor used by the Fifth Circuit to weigh convenience sharply favors transfer in this case, and no factor weighs against transfer.  Thus, the Court should grant Defendants' motion and transfer this case to the Northern District of California.

## I.  Plaintiff's Claims Could Have Been Brought in the Northern District of California

NPS mistakenly argues that WatchGuard is not subject to personal jurisdiction in California.  But WatchGuard's sales of accused products in Northern California clearly satisfy the "minimum contacts" test for personal jurisdiction.  *See, e.g.*, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (personal jurisdiction exists over defendant who purposefully ships accused products into forum).  Indeed, at least one other Court has transferred a suit involving WatchGuard to the Northern District of California.  *See Northpeak Wireless, LLC v. 3Com Corp.*, No. CV-08-J-1813-NE, slip op. (N.D. Ala. Jan. 21, 2009) (Mot. Ex. 10).  Thus, all Defendants could have been sued in the Northern District of California, satisfying the threshold question of the transfer analysis.

## II.  It Is Clearly More Convenient to Proceed in the Northern District of California

### A.  Essentially All Relevant Sources of Proof Are Located in California

The facts presented in connection with Defendants' original motion are more than enough to support a finding that transfer is appropriate; Defendants did not "withhold" any facts necessary for the transfer analysis (*cf.* Opp. at 8).  Nevertheless, after conducting further investigation, Defendants now present additional evidence confirming that the vast majority of relevant documents, employees, witnesses, and other evidence are located in the Northern District of California.  Mot. at 7-9; Declaration of S. Chapman ("SonicWALL Decl.");

2388163.

- 1 -

Declaration of V. Gadde ("Juniper Decl."); Declaration of G. Jackson ("Deep Nines Decl."); Declaration of T. Nelson ("Fortinet Decl.") and Declarations of E. Aarrestad, R. Barber, S. Wang and W. Smith ("WatchGuard Decls.") (collectively, "Defendants' Declarations").**1** For example, Defendants have further identified individuals with substantial knowledge regarding the accused products in this case. *See* Defendants' Declarations. These individuals mostly reside in the Northern District of California, and none resides in Texas. *Id.* Such evidence far outweighs Plaintiff's unfounded speculation that the people it located in Texas "presumably have material and relevant documents." Opp. at 9. Transfer is appropriate where, as here, the vast majority of sources of relevant proof exist in another forum. *See Ennova Direct, Inc. v. LG Elecs. U.S.A., Inc.*, 2:08-cv-22, at *2 (E.D. Tex. Mar. 31, 2010) (granting transfer where several potential witnesses lived in Northern California and none lived within this court's subpoena power).**2**

The case NPS cites for the proposition that customer evidence is relevant, *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, is not about transfer at all. Opp. at 8. If Defendants' customers matter at all, there are significantly more of them in the Northern District of California than in the Eastern District of Texas. *See* Defendants' Declarations.

### B. The Availability of Compulsory Process Favors Transfer

NPS places a great deal of focus on the supposed former employees of Defendants it located in Texas using LinkedIn.com. Cuke Decl. Ex. 12. Even assuming this is an appropriate analysis, a similar LinkedIn search shows nearly 1,600 former Juniper employees, 415 former SonicWall employees, 169 former Fortinet employees, 73 former WatchGuard employees, and 14 former Deep Nines employees located in the Northern District of California—more than 110 times the number of former employees cited by NPS. *See* Ex. 1.**3** Using Plaintiff's own metric,

---

[1] These declarations also show that Plaintiff's "facts" are inaccurate. *See, e.g.*, Juniper Decl. ¶¶ 2-14. For brevity, the facts in Defendants' Declarations are not repeated here but are incorporated by reference and expressly relied upon by Defendants.

[2] NPS also states that its own documents are located in Texas, but the fact that NPS sent its own documents to Texas in anticipation of litigation does not weigh against transfer. *See In re Hoffmann-La Roche Inc.*, 597 F.3d 1333, 1336-37 (Fed. Cir. 2009).

[3] All exhibit citations refer to exhibits attached to the Declaration of Eric B. Hanson.

the Northern District of California's compulsory process power favors transfer.  In any event, NPS has not identified any current or former employee of any defendant within 100 miles of the Eastern District of Texas that is likely to be a witness at trial.  Accordingly, the Eastern District of Texas' lack of compulsory subpoena power also favors transfer.  *See, e.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316-317 (5th Cir. 2008) (*en banc*).

The Northern District of California's ability to compel attendance has become even more important in light of Deep Nines' recent sale of assets, including its sale of the facilities in Northern California where its accused products were designed.[4]  *See* Deep Nines Decl.  Deep Nines is no longer in the business of developing, marketing, or selling the network security products apparently at issue in this litigation.  *Id.*  As a result of the sale, Deep Nines no longer controls the employees and documents at its former facilities in San Jose, California.  *Id.*  These individuals are within 100 miles of the Northern District courthouses and therefore subject to compulsory process, unlike the Texas personnel vaguely identified by NPS.  Consequently the Northern District of California's ability to compel attendance at trial weighs in favor of transfer.

### C. The Cost of Attendance Favors Transfer

NPS asserts that the Federal Circuit denies transfer "where there is so much as a single Texas witness."  Opp. at 6.  The cases NPS cites for this proposition say no such thing.  To the contrary, the Federal Circuit granted mandamus relief in *In re Microsoft Corp.* despite the plaintiff's identification of two Texas witnesses.  2010 WL 4630219 at *2 (Fed. Cir. Nov. 8, 2010).[5]  Consequently, Plaintiff's argument that *In re Acer* cannot be reconciled with *In re*

---

[4] NPS argues that Deep Nines' choice to file a previous lawsuit in the Eastern District of Texas weighs against transfer (Opp. at 3-4), but this position is contrary to established law.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (court clearly erred in finding defendant's prior suit in Eastern District of Texas weighed against transfer).  The prior Deep Nines case involved packet filtering (Opp. Ex. 27, p. 162), a very different technology from what is at issue in this case.  Furthermore, Deep Nines no longer owns the patent asserted in that case.  Ex. 2.

[5] Similarly, in *Optimum Power Solutions LLC v. Apple Inc.*, this Court granted transfer to the Northern District of California even though defendant Dell (a network security product reseller NPS points to in its own opposition brief) and third party Texas

*Genentech* fails. In fact, *Acer* is particularly relevant here, where "[a] substantial number of party witnesses . . . reside in or close to the Northern District of California. If all of these witnesses were required to travel to the Eastern District of Texas, the parties would likely incur significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work." *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).**6**

NPS also argues, without citation, that its size and financial condition weigh against transfer. While a party's finances may be relevant to transfer in other circuits, *e.g. Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), this is not a factor in the Fifth Circuit. Plaintiff's principals admittedly reside in the Northern District of California, as do most relevant witnesses for Defendants. Finally, Plaintiff's retention of consultants in Texas should not weigh against transfer, as NPS should have no trouble securing their participation at trial (if necessary) regardless of venue. *See Immerson Medical, Inc. v. Mentice AB*, 2:08-cv-161, at *6 (E.D. Tex. Sept. 29, 2009); *Catalina Mktg. Corp. v. LDM Grp. LLC*, 2:07-cv-477, at *4 (E.D. Tex. Sept. 9, 2008) ("The availability of compulsory process is not an issue for expert witnesses.").

### D. Administrative Difficulties

NPS admits that this case has not " progressed to the point that judicial economy weights [sic] against transfer" (Opp. at 14 n. 15), yet still argues (without evidentiary support) that "delay is inherent in transfer" and that NPS will "face[] considerable harm in the event of transfer." Opp. at 14. In fact, no discovery has occurred, the Markman hearing is 15 months away, and trial in this case is 20 months away. NPS fails to demonstrate that the Northern District of California cannot maintain a similar schedule.**7**

---

Instruments were located in Texas. Civ. No. 6:10-cv-61 (E.D. Tex. Feb. 22, 2011) (attached as Ex. 3).

    **6**   NPS also improperly relies on *Motiva LLC v. Nintendo Co. Ltd.*—a case that the Federal Circuit ***reversed*** in granting Nintendo's petition for writ of mandamus and transferring the case. *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). NPS also misquotes *Motiva*, adding the categorical "only when" language to its quotation even though that language does not appear in the case. Opp. at 12.

    **7** NPS also argues that cases are more likely to be stayed pending re-examination in the Northern District than in the Eastern District. Likelihood of a stay is a not a factor in the

### E. Local Interests

NPS argues it is a "legitimate company" (Opp. at 15), but the fact that NPS did not break the law in connection with its recent incorporation in Texas hardly means the case should not be transferred.  *See, e.g.*, *In re Zimmer Holdings, Inc*., 609 F.3d 1378, 1381 (Fed. Cir. 2010) (plaintiff's presence in Texas was "recent, ephemeral, and an artifact of litigation" and therefore not entitled to deference).  Additionally, the Federal Circuit has held that Defendants' sales into Texas should not count as a local interest.  If "the products were sold throughout the United States, as here, then the citizens of the venue chosen by the plaintiff 'have no more or less of a meaningful connection to the case than any other venue.'"  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citing *In re TS Tech USA Corp*., 551 F.3d 1315, 1321 (Fed. Cir. 2008)).  In reality, only the Northern District of California can be said to have a substantial local interest in deciding this case; it is where three out of five Defendants are headquartered (collectively employing thousands of people) as well as where most of the relevant witnesses, documents, and evidence are located.  *See* Defendants' Declarations.

### F. Conclusion

This case has no meaningful ties to the Eastern District of Texas.  Plaintiff's desperate search for contacts between Defendants and Texas does not change the simple fact that all or nearly all of the convenience factors strongly point to the Northern District of California.  Defendants therefore respectfully request the Court to transfer this case to the Northern District of California.

---

transfer analysis; indeed, the law on granting stays is the same in this venue as it is in Northern California.  *See, e.g. Tse v. Apple Inc*., 2007 U.S. Dist. LEXIS 76521 at *5 (N.D. Cal. Oct. 4, 2007); *Soverain Software LLC v. Amazon.com, Inc*., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).  Plaintiffs also make the absurd argument that the Court should punish Defendants by denying transfer because the filing of a reexamination request is evidence of an attempt to "game the system."  Opp. at 1, 15.  This allegation is false.  Fortinet filed a reexamination request (which the PTO has now granted) because Plaintiff's patent is invalid.

Dated: March 10, 2011

By: /s/ *Douglas J. Dixon*
David C. McPhie (*pro hac vice*)
(dmcphie@irell.com)
Douglas J. Dixon (*pro hac vice*)
(ddixon@irell.com)
**IRELL & MANELLA LLP**
840 Newport Center Dr., Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

Melissa Richards Smith
Texas State Bar No. 24001351
(melissa@gillamsmithlaw.com)
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Defendant Juniper Networks, Inc.*

- 7 -

**CERTIFICATE OF SERVICE**

      I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of the foregoing via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any counsel of record will also be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated:  March 10, 2011

                                         By:  /s/ *Douglas J. Dixon*

                                               Douglas J. Dixon