IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NETWORK PROTECTION SCIENCES, LLC,

    Plaintiff,

  v.

FORTINET, INC.,

    Defendant.

No. C 12-01106 WHA

**ORDER GRANTING MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

## INTRODUCTION

In this patent infringement action involving network firewalls, defendant moves to amend its invalidity contentions. For the reasons explained below, the motion is **GRANTED**.

## STATEMENT

Plaintiff Network Protection Sciences, LLC ("NPS") is asserting United States Patent No. 5,623,601 against defendant Fortinet, Inc. The technology at issue in this action relates to firewall technology intended to improve network security and user convenience.

The action was originally filed in Texas in mid-2010. It was transferred to this district in March of 2012. At that point, NPS was asserting claims 1–41 of the '601 patent against Fortinet. Following a conference, a case management scheduling order set a deadline of August 31, 2012, for the parties to update their infringement and invalidity contentions (Dkt. No. 153 at 1). The parties served their updated contentions on the evening of the August 31 deadline. Without prior notice to Fortinet, NPS's updated infringement contentions dropped infringement contentions for

claims 26–27, and added infringement contentions for claims 42–53 and 55–57 (for a total of 54 asserted claims). Fortinet did not then request leave to add invalidity contentions for the newly-asserted claims. NPS subsequently reduced the number of claims it is asserting in this action to fifteen. Of the fifteen, Fortinet had never served invalidity contentions for three of the claims.

A final claim construction order dated January 14, 2013, construed six terms in the '601 patent (Dkt. No. 189). Only one of Fortinet's proposed constructions was adopted. Fortinet subsequently located three new, allegedly-material prior art references.

Fortinet now moves under Patent Local Rule 3-6 for leave to file amended invalidity contentions. According to Fortinet, its amended invalidity contentions "(i) add [the] three [new] prior art references; (ii) drop 28 prior art references; (iii) narrow the disclosed quantities of 'obviousness' combinations under 35 U.S.C. § 103; and (iv) address only the 15 patent claims that . . . [NPS] has recently committed to keep in the case" (Br. i). NPS objects that Fortinet has not shown good cause or diligence in seeking amendment, and that the amendments would unduly prejudice NPS. Discovery remains ongoing; the discovery cutoff is firmly set for June 28, 2013. This order follows full briefing and oral argument.

## ANALYSIS

Patent Local Rule 3-6 provides:

> Amendment of the . . . Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Nonexhaustive examples of circumstances that may, absent undue prejudice to the nonmoving party, support a finding of good cause include: (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

**1. GOOD CAUSE.**

Fortinet argues that good cause to amend exists under Patent Local Rule 3-6(b) because it has recently discovered three material prior art references due to a new search based on the results of claim construction. NPS objects on the ground that Fortinet has not explained why the claim construction rulings necessitate amendment. Fortinet persuasively answers this objection in its reply brief. Prior to claim construction, Fortinet interpreted the '601 patent to claim only a

2

specific type of transparent, application-level firewall. Based on the adoption of NPS's proposed constructions of several disputed terms in a claim construction order, Fortinet commissioned a new, broader prior art search targeting any type of transparent application-level firewall. This search found three prior art references material in light of claim construction. (NPS does not object that the new prior art references are not material.) This alone would not necessarily warrant an amendment but in the overall circumstances of the case, good cause to amend has been shown.

Earlier in this action, NPS imposed upon Fortinet a bone-crushing burden of conducting a prior art search for more than fifty patent claims. This was an unreasonable burden for NPS to place on its adversary, especially since NPS should have been more selective in choosing claims to assert. NPS has recently reduced the number of asserted claims to fifteen, but even this number is still too large to be tried. This is the main point. NPS has behaved unreasonably in imposing unnecessary cost on its opponent.

Fortinet has acted reasonably and will be permitted to amend in light of (1) the huge number of claims previously asserted by NPS, (2) the fact that Fortinet seeks to add only three references to a reference list that originally included over fifty, and (3) the fact that Fortinet promptly communicated its intent to update its invalidity contentions to NPS upon completion of the new prior art search. It also helps that Fortinet will trim away twenty-eight prior art references to bring its total down to twenty-five.

**2.     DILIGENCE.**

NPS contends that Fortinet's efforts to amend lack diligence in three respects: (1) Fortinet was not diligent in carrying out its prior art searches, (2) Fortinet was not diligent in seeking leave to amend after the January 14 final claim construction order, and (3) Fortinet was not diligent given the deadline of August 31, 2012 for amendment. None of these contentions is persuasive.

*First*, NPS argues that because the parties have been litigating for several years, Fortinet should have discovered the prior art references during its prior searches. This argument is misguided. It is not the case that Fortinet failed to conduct prior art searches, nor is there any

3

contention that it conducted them negligently. Indeed, according to NPS, Fortinet's earlier searches "scoured the earth for prior art . . . [and] [w]hen that failed, Fortinet began again" (Opp. 7). Unsuccessful prior art searches, standing alone, do not demonstrate an absence of diligence.

*Second*, NPS argues that Fortinet was lax in seeking amendment after the January 14 claim construction order. This argument is unpersuasive. Fortinet commissioned its new prior art search when the tentative claim construction order issued, that is, even before the final claim construction order. The search was completed on February 20. Fortinet has submitted documentary evidence of the parties' negotiations over the ensuing six weeks regarding updated invalidity contentions and related issues. These communications and the meet-and-confers reflected are infected with foot-dragging typical of contentious litigation. Fortinet then filed the instant motion just two days after NPS confirmed that it would not consent to Fortinet filing updated invalidity contentions. There was no unreasonable delay.

*Third*, NPS notes that the deadline to amend expired on August 31, 2012. This argument is, in large part, a red herring. As explained above, the amendment was provoked by events *after* the deadline, namely the claim construction order.

In a variation of this argument, NPS objects to Fortinet's amendments because Fortinet would — for the first time — assert defenses to three previously-uncontested patent claims. When NPS updated its infringement contentions on the deadline last August, Fortinet learned that NPS was asserting fifteen additional patent claims. NPS does not contend that Fortinet could have timely responded to claims asserted on the deadline to amend. Fortinet did not, however, seek leave thereafter to amend its invalidity contentions and contest these new claims.

Now that NPS has dropped the total number of claims it is asserting down to fifteen, three of the previously-uncontested claims remain in the action. NPS argues that Fortinet should have sought leave to address these three claims long ago. As explained above, this argument is unpersuasive because Fortinet did not know about the new prior art references until after claim construction, which occurred more than four months after the new claims were added. And, NPS's diligence challenges are outweighed by its own unreasonable behavior.

4

1    NPS suggests, but does not demonstrate, that Fortinet proposes amendments that are
separate from the three new prior art references and twenty-eight dropped references. Notably,
NPS has not objected to any *specific* amendments aside from modifications relating to the prior
art references. This order declines to engage in line-by-line editing of an invalidity-contentions
document totaling 704 pages.

### 3. PREJUDICE.

The prejudice to NPS is insufficient to bar this amendment because of the unreasonable
way in which NPS has managed its own infringement contentions, asserting a vast number of
claims.

### CONCLUSION

Fortinet's motion for leave to amend its invalidity contentions is **GRANTED**.

The Court is concerned that both sides have an impractical view trying this case to a jury.
It is impractical for either side to present fifteen claims at trial. Successful patent plaintiffs
almost always present only one, two or three claims to a jury. Successful patent defendants
usually only use one or two prior art references to defeat a claim. The Court wishes to help the
parties present this case in a way that is manageable and that will fit into the time frame available
for trial. This will be addressed at the final pretrial conference.

**IT IS SO ORDERED.**

Dated: May 9, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5