MICHAEL CUKOR (NY Bar No. 3935889)
GIBBONS P.C.
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Tel:  (212) 613-2013
Fax:  (212) 554-9658
Email:  mcukor@gibbonslaw.com

VINCENT E. MCGEARY (NJ Bar No. 041681991)
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
Tel:  (973) 596-4837
Fax:  (973) 639-6477
Email:  vmcgeary@gibbonslaw.com

JILL F. KOPEIKIN (CA Bar No. 160792)
VALERIE M. WAGNER (CA Bar No. 173146)
GCA LAW PARTNERS LLP
1891 Landings Drive
Mountain View, CA 94043
Tel:  (650) 428-3900
Fax:  (650) 428-3901
jkopeikin@gcalaw.com
vwagner@gcalaw.com

Attorneys for Plaintiff
Network Protection Sciences, LLC

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK PROTECTION SCIENCES, LLC<br><br>Plaintiff,<br><br>vs.<br><br>FORTINET, INC.<br><br>Defendants. | No. 3:12-CV-01106-WHA<br><br>**PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS FOR (i) LACK OF STANDING AND (ii) LITIGATION MISCONDUCT**<br><br>JURY TRIAL DEMANDED |

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1

## TABLE OF CONTENTS

2                                                                                    Page No.

3   I.      INTRODUCTION ........................................................................   1

4   II.     BACKGROUND.........................................................................   2

5           A. Network Protection Sciences, LLC ...........................................   2

6           B.  The Assignment ......................................................................   4

7           C. Procedural Background................................................................   5

8   III     APPLICABLE LEGAL STANDARDS .........................................   6

9           A. Standing.....................................................................................   6

10          B. "Litigation Misconduct" .............................................................   7

11  IV.     ARGUMENT ................................................................................   8

12          A. Standing.....................................................................................   8

13

14              1.  Full Legal Title to the '601 Patent Was Assigned to NPS Prior to Filing
                    the complaint, Therefore NPS Had Standing.. .................................   8

15              2.  Mark Figueiredo's Notarized Signature Is Prima Facie Evidence of a

16                  Valid Assignment ...............................................................   9

17              3.  The Operative Document Is an Assignment, Not an Agreement for a

18                  Sale ...................................................................   10

19              4.  NPS' Signature Was Not Required ................................   11

20              5.  The Parties' Intent Was to Convey the '601 Patent on April 30, 2010 .11

21

22              6.  Federal Law Governs Assignments..................................   12

23              7.  The Case Law Cited By Fortinet Is Inapplicable............................   12

24              8.  April 30, 2010 Is Also the Effective Date Under Texas Law 14

25

26

27

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

B. There Is No Basis to Dismiss For "Litigation Misconduct" .....................14

    1.   NPS Is A Texas Corporation and Conducts Business There............ 15

    2.   Gregory Cuke's Role With NPS....................................................... 17

    3.   Fortinet's Discovery Issues Are Non-Prejudicial Conclusory Attorney Arguments ........................................................................................ 19

       i.  NPS' Interrogatory Responses ............................... 19

       ii.  NPS' Timely Production Following Case Transfer, Nearly A Year Ago ......................................................................... 21

       iii.  NPS' Significantly Reduced The Number Of Asserted Claims Months Ago And Properly Identified The Accused Instrumentality ……………………………………………………………..22

V.   CONCLUSION ................................................................................... 24

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1

2 **<u>TABLE OF AUTHORITIES</u>**

3

4 **<u>Cases</u>**                                                                                              <u>Page No.</u>

5

6 *Abraxis Bioscience, Inc. v. Navinta LLC,*
        625 F.3d 1359 (Fed. Cir. 2010) ................................................................ 12, 13

7
*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
8       69 F.3d 337, 348 (9th Cir. 1995). ........................................................... 7, 8

9 *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,*
        482 F.3d 1091, 1096 (9th Cir. 2007) ....................................................... 7
10

11 *Cradle IP, LLC v. Texas Instruments, Inc.,* No. 11-1254-SLR
        2013 U.S. Dist. LEXIS 19245, at *6-8 (D. Del. Feb. 13, 2013) ............. 17
12

13 *eComSystems, Inc. v. Shared Mktg. Servs.,*
        2012 U.S. Dist. LEXIS 6478 (M.D. Fla. Jan. 20, 2012) ........................ 6
14

15 *Fjelstad v. Am. Honda Motor Co., Inc.,*
        *762 F.2d 1334, 1338 (9th Cir. 1985)* ...................................................... 7, 8
16

17 *Highmark, Inc. v. Allcare Health Mgmt. Sys.,*
        687 F.3d 1300, 1315-1316 (Fed. Cir. 2012) ........................................... 7
18

19 *In re Cardiosystems, Inc.* 340 B.R. 127, 146
        340 B.R. 127, 146 (D. Mass. 2006) ......................................................... 6

20
*In re Motors Liquidation Co.,*
21      460 B.R. 603 (S.D.N.Y., November 28, 2011) ....................................... 10
*Mylan Laboratories, Inc. v. Akzo, N.V.,*
22      2 F.3d 56 (4th Cir. 1993) ......................................................................... 6

23 *Pagtalunan v. Galaza,*
        291 F.3d 639, 642 (9th Cir. 2002) ........................................................... 7
24

25 *Portney v. CIBA Vision Corp.,*
        2008 U.S. Dist. LEXIS 106676 (C.D. Cal. Dec. 24, 2008) .................... 7
26

27 *Quantum Corp. v Riverbed Tech., Inc., No.* C 07-04161 WHA,
        2008 WL 314490 (N.D. Cal. Feb, 4, 2008) ............................................ 13
28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

*RAD Data Communications Inc. v. Patton Electronics Co.,*
  882 F. Supp. 351, 353 (S.D.N.Y. 1995), *dismissed on other grounds*, No. 95-1370,
  1995 WL 492991, 1995 U.S. App. LEXIS 22908 (Fed. Cir. Aug. 9, 1995)("Rad
  Data"). .................................................................................................... 6,7, 12

*Sony Computer Entm't Am., Inc. v. Filipiak,*
  406 F. Supp. 2d 1068, 1076 (N.D. Cal. 2005) ......................................... 7

*Speedplay, Inc. v. Bebop, Inc.,*
  211 F.3d 1245, 1249-50 (Fed. Cir. 2000) ........................................... 13

*Sky Techs. LLC v. SAP AG,*
  576 F.3d 1374, 1379 (Fed. Cir. 2009). ............................................... 6

*Welcome Co. v. Harriet Carter Gifts, Inc.,*
  1998 U.S. Dist. LEXIS 21884 (C.D. Cal. Mar. 26, 1998). ..................... 6

*Wyle v. R.J. Reynolds Indus., Inc.,*
  709 F.2d 585, 591 (9th Cir. 1983) ..................................................... 7


**Statutes**                                                            Page No.

35 U.S.C. § 261 .................................................................................... passim

37 CFR 3.54 ........................................................................................... 6

Texas Business Organization Code ("Bus. Orgs.") § 5.201 ...................................
15

**Rules**                                                               Page No.

Federal Rules of Civil Procedure 37(b)(2)(A)(v) ................................. 8

Federal Rules of Civil Procedure 41(b) .............................................. 8


**Miscellaneous**                                                       Page No.

Manual of Patent Examining Procedure ("MPEP") § 317.03 .............................. *

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

## I.      INTRODUCTION

The Court should deny Fortinet, Inc.'s ("Fortinet") motion to dismiss for (i) lack of standing and (ii) litigation misconduct because NPS owned legal and equitable title to the '601 patent before commencing this action and the allegations of litigation misconduct are wholly unsupported by the facts and law, and because Fortinet's claims of litigation misconduct are based upon mischaracterizations of fact and law and none of the alleged conduct was willful, in bad faith, or prejudicial.

A resolution of the standing issue is quite simple.  Ownership and assignment of patents is governed by Federal Law - 35 U.S.C. § 261 - which provides that a certificate of acknowledgement under the hand and official seal of a person authorized to administer oaths within the United States "*shall be prima facie evidence of the execution of an assignment*." Further, pursuant to §261, the effective date of a patent assignment is the date of the assignor's execution of the assignment.  Here, Mount Hamilton Partners, Inc. ("MHP") assigned U.S. Patent No. 5,623,601 ("the '601 patent") (*i.e.,* assignor "hereby assigns") to NPS on April 30, 2010, as witnessed and acknowledged by a licensed Notary Public:  IN WITNESS WHEREOF this Assignment of Patent Rights is executed at San Jose, CA on [**April 30, 2010**]." (emphasis added).  As if it is not clear enough, the language of the Assignment reaffirms the intent of the assignor:  "Assignor owns, **and by this document assigns to Assignee**, all right, title, and interest to the ['601 patent]." Docket 207-14 (emphasis added).

Thus, under the plain language of the assignment, Section 261, case law directly on point, the assignor's intent, and the undisputed facts, there can be no doubt that NPS owned all rights, title, and interest to the '601 patent effective April 30, 2013, and therefore had standing to commence this action on July 6, 2010, when it filed the Complaint (ECF No. 001) for patent infringement against Fortinet.

Fortinet's assertion that this action should be dismissed on the basis of litigation misconduct is equally baseless.  As an initial matter Fortinet has mischaracterized many of the

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

1

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

facts that it contends constitute "litigation misconduct. "  But even if the Court were to accept all facts as characterized by Fortinet, the result would be the same; the "facts" as alleged by Fortinet cannot serve as a legitimate basis for dismissal.  These alleged facts are irrelevant to the legal issues and support neither a finding of willfulness, fault or bad faith on the part of NPS nor prejudice to Fortinet.  The Court must weigh these factors before deciding whether to impose the harsh sanction of dismissal.  Thus, notwithstanding the skewed and unpleasant picture of NPS that Fortinet paints, it fails to offer legal and factual support for the extreme relief it seeks, and therefore has not established a basis for this Court to find the "extreme circumstances" necessary to support dismissal.  *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985).

As Fortinet has failed to meet its burdens on its claims relating to standing and litigation misconduct, its motion should be denied.

## II.      BACKGROUND

### A.      Ramde's and Lam's Businesses

Wilfred Lam ("**Lam**") and Rakesh Ramde ("**Ramde**") are California attorneys whose experience in private practice of law included the representation of numerous start-ups in Silicon Valley in intellectual property based corporate transactions.  For example, Mr. Ramde practiced corporate law with the law firm now known as Cooley LLP and subsequently at the firm of Pennie & Edmonds.  Declaration of Rakesh Ramde ("**Ramde Decl.**"), ¶ 9.  He represented numerous start-ups here in the valley in intellectual property based corporate transactions and worked as General Counsel to DoDots, Inc., a start-up corporation founded by three inventors from Stanford University.  *Id.* In the course of providing such legal services, Ramde and Lam learned first hand the importance of intellectual property, and particularly patents, in business transactions by and among operating companies, venture capitalist, IP businesses, research companies and the like. *Id*. at ¶ 10.

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

2

Ramde and Lam left the active practice of law in 2002 to use this knowledge and skill base to start an intellectual technology business, Innovation Management Sciences ("**IMS**").  Ramde Decl., ¶ 11.  In the eleven years that they have been working together, Lam and Ramde have been involved in approximately one hundred (100) patent transactions.  *Id.*  These transactions have included strategic patent acquisitions for operating companies, brokering patent portfolios, patent transactions for purposes of raising capital, patent acquisition for investment purposes, and selling patents to both private and public companies.  IMS itself has created approximately 22 LLC that serve to buy and sell patents, not for litigation.  *Id.* at ¶ 12.[1]

From its inception in 2002 to 2009, entities controlled or managed by Ramde, Lam or IMS had been involved in at least fifty-seven (57) patent portfolio sales involving hundreds of inventors and hundreds of patents.  Neither IMS nor any entity managed or controlled Lam or Ramde Lam ever filed any litigation prior to 2009.  *Id.* at ¶ 13.  Of the hundreds of patents acquired by entities controlled by Mr. Ramde and Mr. Lam, the vast majority of patents have been sold to third parties through LLCs.  Only five of the patents were ever the subject of litigation; of these five, only three are currently in litigation.  *Id.* at ¶ 14.  The patent-in-suit in this action is one, and it was subject to re-exam by the US Patent and Trademark Office where all the claims were reaffirmed and new claims issued.

NPS was duly formed, and is duly recognized by the State of Texas, as a Texas limited liability company.  NPS has maintained all its corporate formalities, has conducted all its business as a corporate entity and has an actual physical address located at 3301 W. Marshall Ave., Suite 302, Longview, Texas.  Ramde Decl., ¶ 19.

---

[1] In fact, two of the LLCs set up by IMS were created not only to acquire patent assets but also to raise capital and develop technology and companies around the acquired patent assets.  These two LLCs were Applied Protein Sciences, LLC ("**APS**") and PicoSearch, LLC ("**Picosearch**").  APS recruited advisers affiliated with the University of California, San Francisco and Harvard University, funded drug development for use in treating cancer, ran clinical studies in Boston, and had preliminary discussions with the Federal Drug Administration ("**FDA**").  The assets of APS, including all patents and test data, were acquired by a drug development company, Indus Pharmaceutical, Inc. Ramde Decl., ¶ 17; *and see* Ramde Decl., Exh. 1.

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

NPS has subleased office space (Ramde Decl., Ex. 2), opened a bank account with Texas-based Austin Bank (*Id*., Ex. 3) and is prominently included on the website of Unifi Scientific (Ex. 4). NPS has corporate counsel Michael C. Coker ("**Coker**") located nearby at 4540 Kinsey Drive in Tyler, Texas, who is its registered agent for service. *Id*. at ¶ 20.

NPS has also retained and entered into a consulting agreement with Gregory Cuke ("**Cuke**") to perform a variety of important tasks for NPS, including handling day-to-day activities in the office and directing business development. *Id.* at ¶ 22-23. Mr. Cuke is listed on the NPS website as the contact for licensing patent assets. And he has authority to investigate business opportunities. Specific examples include approaching Sprint with a potential sale of patents and Altera Corp. *Id.* at ¶ 24  Mr. Cuke also has the authority to initiate transactions.[2]  These examples merely highlight that Mr. Cuke indeed has been employed to handle various transactions on behalf of NPS.

### B.      The Assignment

Hung Vu is the sole inventor of the '601 patent. Vu assigned the '601 patent while it was still pending to Milkyway Networks Corp. ("**Milkyway**") on November 17, 1994. The assignment was recorded with the United States Patent and Trademark Office ("**USPTO**") on November 21, 1994 (Reel/Frame 007243/0691). Milkyway then assigned the '601 patent to SLM Networks Corp. ("**SLM**") on October 1, 1998. That assignment was recorded with the USPTO on December 10, 1998 (Reel/Frame 007243/0691). The patent was then assigned to Bevertec CST Inc. on February 20, 2004, the assignment recorded on July 28, 2004 (Reel/Frame 015612/0849). Bevertec CST Inc. transferred the '601 patent to MHP on August 22, 2006 and that assignment was recorded on September 21, 2009 (Reel/Frame 023254/0681). On April 30, 2010, MHP assigned the '601 patent to NPS (the "**Assignment**"). The Assignment was executed on behalf of MHP by Mark

---

[2] For example, Mr. Cuke entered into (i) a patent purchase agreement on behalf of NPS in approximately June 2010 (NPS paid $150,000 for the purchase of seven (7) patents), (ii) a patent sales agreement to sell patents to a company in Waco, Texas in around April 2011, (iii) a brokerage agreement with an inventor in approximately June 2010. *Id.* at ¶ 24-27.

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

4

1

2

Figueiredo under the hand and official seal of a notary public.  Therafter, at the direction of

Hannah Tran, Mr. Cuke added his signature to the Assignment on behalf of NPS.

3

4

5

Declaration of Hannah Tran ("**Tran Decl**"), ¶ 5.  Ms. Tran instructed Cuke to sign the

Assignment not to effectuate or validate the assignment, but to ensure recordability

internationally if necessary because the '601 patent involved a foreign counterpart.  *Id.,* at

6

7

8

¶¶4-5.  The Assignment, with both MHP's and NPS' signatures, was recorded with the

USPTO on July 26, 2011 (Reel/Frame 026651/0228).  Once recorded, the Assignment of

the '601 patent from MHP to NPS was publicly available.  USPTO publication of April 30,

9

10

2010 as the execution date of the Assignment reflects that manifestation of the parties

intention that the transfer occurred on that date.[3]

11

12

     **C.**      **Procedural Background**

13

14

     Having all rights, title, and interest to the '601 patent assigned to it on April 30,

2010, NPS filed this patent infringement action on July 6, 2010 in the Eastern District of

Texas ("E.D. Tex.") against a number of defendants, including Fortinet, based on

15

16

defendants' infringement of the '601 patent relating to defendants' products implementing

firewall technology. *See* ECF. No. 1 at ¶ 12.

17

18

     The action was eventually transferred to this Court on March 6, 2012.  ECF

No. 123.  In its motion to transfer, Fortinet tellingly acknowledged that NPS was legally

19

20

incorporated and registered as a Texas limited liability company on April 6, 2010.  ECF

No. 54, Part I.A.  Further, Fortinet acknowledged that NPS is a legitimate company.  ECF

21

22

No. 74, Part II.E.  To be clear, Fortinet raised no issue regarding NPS' sub-lease of office

space from Unifi in Longview, Texas, nor did it take issue with the fact that NPS had only

23

24

one part-time employee.  ECF No. 54, Part I.A.

25

26

27

28

---

[3]http://assignments.uspto.gov/assignments/q?db=pat&qt=pat&reel=&frame=&pat=5623601&pub=&asnr=&
asnri=&asne=&asnei=&asns=

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

III.    **APPLICABLE LEGAL STANDARD**

A.      **STANDING**

To pursue a claim for patent infringement, a party must have standing at the inception of the litigation.  *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009).  "A party that has been granted all substantial rights under the patent, 'regardless of how the parties characterize the transaction that conveyed those rights,' is considered to have legal title, and therefore standing." *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000); *in accord Sky Techs* 576 F.3d at 1379 .   Upon a challenge of standing, the Court will construe the facts in the light most favorable to the party opposing the motion.  *See Mylan Laboratories, Inc. v. Akzo*, N.V., 2 F.3d 56, 62 (4th Cir. 1993.A patent has "the attributes of personal property."   35 U.S.C. § 261; in accord *Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 122 (Tex. App. 1996); *FOR3D v. Starks et al.*, No. C-02-3564 VRW, 2005 U.S. Dist. LEXIS 25276, *16 (N.D. Cal. Oct. 27, 2005).  . Accordingly, "patents, or any interest therein, shall be assignable." 35 U.S.C. § 261; *see also In re Cardiosystems, Inc.* 340 B.R. 127, 146 (D. Mass. 2006)(finding that patents are "freely assignable").

35 U.S.C. § 261 of the Patent Laws governs the law of patent assignment and expressly states that all assignments of patent interest must be in writing.  35 U.S.C. § 261. There are no other statutory requirements for valid patent assignment.[4]  And, courts have unequivocally held that "[Section] 261 makes the effective date of an assignment the date that it was signed by the purported patent owner." ; *RAD Data Communications Inc. v. Patton Electronics Co.*, 882 F. Supp. 351, 353 (S.D.N.Y. 1995), dismissed on other

---

[4] Certification of a patent assignment by a person or entity authorized to administer oaths is *prima facie* evidence of a valid assignment.  *See e.g.*, 35 U.S.C. § 261; *Welcome Co. v. Harriet Carter Gifts, Inc.*, 1998 U.S. Dist. LEXIS 21884 (C.D. Cal. Mar. 26, 1998); *eComSystems, Inc. v. Shared Mktg. Servs.*, 2012 U.S. Dist. LEXIS 6478 (M.D. Fla. Jan. 20, 2012) But an assignment does not need to be recorded to be valid the recording of the assignment does not bear on the validity of the assignment. 35 U.S.C. § 261.  The recording of the assignment is merely a ministerial act, and has no legal effect on the ownership of the patent.  *See* 37 CFR 3.54 and MPEP § 317.03.

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

grounds, No. 95-1370, 1995 WL 492991, 1995 U.S. App. LEXIS 22908 (Fed. Cir. Aug. 9, 1995)("Rad Data").

### B.     "LITIGATION MISCONDUCT"

"Litigation misconduct" may serve as a basis for dismissal only under the most extreme circumstances."[5]  The Ninth Circuit has held that "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."  *Fjelstad v. Am. Honda Motor Co., Inc*., 762 F.2d 1334, 1338 (9th Cir. 1985)(quoting *Wyle v. R.J. Reynolds Indus., Inc*., 709 F.2d 585, 589 (9th Cir. 1983)).  However, dismissal is warranted only under "extreme circumstances." *Fjelstad*, 762 F.2d at 1338 (emphasis added).

Recognizing the extreme nature of dismissal, the Ninth Circuit has developed the following five-part test (the "*Pagtalunan* Factors") to determine whether a case-dispositive sanction is just. "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing <u>Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992))</u>; *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007); *Portney v. CIBA Vision Corp*., 2008 U.S. Dist. LEXIS 106676 (C.D. Cal. Dec. 24, 2008); *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).  For a dismissal to be proper, the conduct to be sanctioned must be due to willfulness, fault, or bad faith and must result in prejudice.  *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1340 (9th Cir. 1985); *Anheuser-Busch, Inc.*, 69 F.3d at 348; *Sony Computer Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1076 (N.D. Cal. 2005) ("The allegations of misconduct fail both

---

[5] Litigation misconduct generally involves "unethical or unprofessional conduct by a party or  his attorneys during the course of adjudicative proceedings," and includes advancing frivolous arguments during the course of the litigation or otherwise prolonging litigation in bad faith.  *Highmark, Inc. v. Allcare Health Mgmt. Sys*., 687 F.3d 1300, 1315-1316 (Fed. Cir. 2012)

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

because they are not supported by the evidence and because, even if true, there is no suggestion [movant] was prejudiced in any way"). Due process concerns additionally require that a relationship exist between the alleged misconduct and the matters in controversy such that the transgression "threatens to interfere with the rightful decision of the case." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983); *Anheuser-Busch, Inc.*, 69 F.3d at 348. Public policy weighs *against* dismissal, especially where the claim has merit. *See Pagtalunan* 291 F.3d 642.

Fortinet fails to address these factors that the Court must weigh in evaluating whether the harsh sanction of dismissal for litigation misconduct may be imposed.[6] Fortinet concocts its own standard leaving both NPS and the Court to decipher the legal basis of Fortinet's ambiguous and infirm claim -- which as explained *infra* -- is baseless.[7]

## IV.   ARGUMENT

### A.   Standing

#### 1.   Full Legal Title to the '601 Patent Was Assigned to NPS Prior to Filing the Complaint, Therefore NPS Had Standing

Here, there can be no credible challenge that the Assignment was effective on April 30, 2013. It is undisputed that prior to April 30, 2010, MHP was the owner of the '601 patent. It is further undisputed that MHP executed an Assignment stating that MHP "hereby sell[s], assign[s], transfer[s], and convey[s]" . . . and "*by this document assigns to Assignee, all right, title, and interest*" to the '601 patent to NPS on April 30, 2010. Docket, 207-14 (italics added) Finally, the Assignment explicitly states, "**executed** at San Jose, CA on **4/30/10**." *Id.* (emphasis added).

---

[6] Litigation misconduct generally involves "unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings," and includes advancing frivolous arguments during the course of the litigation or otherwise prolonging litigation in bad faith. *Highmark, Inc. v. Allcare Health Mgmt. Sys.*, 687 F.3d 1300, 1315-1316 (Fed. Cir. 2012)

[7] Indeed, pursuant to the Fed. R. Civ. P. 37(b)(2)(A)(v), a court has the discretion to dismiss an action in part or whole for failure to comply with a court order (discovery order). Likewise under Fed. R. Civ. P. 41(b), if a "plaintiff fails to prosecute or comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." But, Fortinet points to no Federal Rule justifying its motion, and proffers no evidence in support of the same.

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Fortinet, however, argues that MHP's Assignment was ineffective until NPS affixed its signature to the document, although MHP's Assignment of the '601 patent acknowledged receipt of consideration as of the date of MHP's execution.   Therefore, pursuant to the only governing federal statute and applicable federal case law addressing that statute, the assignment was effective on the date executed by the assignor.   *RAD Data* 882 F. Supp. at 353 (S.D.N.Y. 1995) (Section 261 "makes the effective date of an assignment the date that it was signed by the purported patent owner).   The analysis ends there.   NPS owned the '601 patent as of April 30, 2010 and therefore had standing when it filed the Complaint against Fortinet on July 6, 2010.

## 2.    Mark Figueiredo's Notarized Signature Is Prima Facie Evidence of a Valid Assignment

Section 261 establishes that a certificate of acknowledgement under the hand and official seal of a person authorized to administer oaths within the United States . . . shall be prima facie evidence of the execution of an assignment, grant or conveyance of a patent or application for patent."   35 U.S.C. §261.   The Assignment transferring ownership of the '601 patent was signed by under the hand and official seal of a notary public.   The certified acknowledgement of the notary public states that Mark Figueiredo:

> proved [] on the basis of satisfactory evidence to be the person whose name is subscribed to the [Assignment] and acknowledged . . . that he executed the [Assignment] in his **authorized capacity**, **and that by his signature on the [Assignment] the person, or the entity upon behalf of which the person acted, executed the [Assignment]**.

Docket 207-14 (emphasis added).   On its face Mr. Figueiredo's notarized signature is prima facie evidence that the '601 patent was conveyed to NPS. Further, Mr. Figueiredo's notarized signature on the Assignment of the '601 patent is an acknowledgement of receipt of consideration as of the date of MHP's execution.   Docket 207-14 ("For good and

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

valuable consideration . . . ."). [8]   As movant, it is Fortinet's burden to prove otherwise; a burden it did not on its Motion, and cannot now, meet.

### 3.      The Operative Document is an Assignment, Not an Agreement for a Sale

Fortinet argues that the Assignment was a "gift," and therefore not an effective assignment.  Motion at 15-16.  In recognition of the lack of merit of this argument, Fortinet also argues that the Assignment document was an "agreement for sale."  These arguments are flatly wrong. .  As a threshold matter, Fortinet cites no legal authority, and indeed there is no legal authority suggesting that assignments must be gifts.   On its face, the Assignment expressly states that MHP "does hereby sell, assign, transfer, and convey and *"by this document assigns to Assignee, all right, title, and interest*" to the '601 Patent. Docket 207-14, under title of document "(Assignment of Patent Rights") and at I (i). Without any explanation, Fortinet's urges the Court to ignore the express assignment language appearing in two separate provisions of the Assignment and asks the Court simply to focus on the term "sell," which it argues means that NPS needed to physically sign the Assignment to make it effective.  This argument is nonsensical and further and further ignores that in executing the Assignment MHP concedes that it was, through the execution of the Assignment document, assigning the patent rights for "good and valuable consideration, the receipt of which is hereby acknowledged." There is no basis in law or logic for arbitrarily ignoring all of the terms in the Assignment; all terms must be given their proper meaning and considered in context.  *In re Motors Liquidation Co.,* 460 B.R. 603 (S.D.N.Y., November 28, 2011)(The cardinal rule of contract interpretation is to ascertain and "give effect to the expressed intentions of the parties.")  It is wholly improper and misleading for Fortinet to cherry-pick one of four conveyance term, by which *"this document assigns"* all intellectual property rights in the '601 Patent. As Fortinet

---

[8] While the notarization of sufficient, NPS wishes to underscore that Mark Figueiredo was authorized to execute the Assignment on behalf of MHP.  *See* Ramde Decl., ¶ 33.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1  concedes, the "terms in the Alleged Assignment must be given effect . . . .". *See* Motion at

2  16.  The terms of the Assignment, when taken together and read in context, can lead to but

3  one conclusion -- the operative document is an assignment and not an "agreement for

4  sale."

5            **4.    NPS' Signature Was Not Required**

6            Fortinet also argues that the Assignment's inclusion of a signature block for

7  assignee NPS is an express requirement that NPS "accept" the assignment prior to

8  execution of the Assignment.  Fortinet is wrong.  There is no language in the Assignment

9  that explicitly or implicitly supports such a condition or obligation.  The Assignment only

10 states that assignor "does hereby sell, assign, transfer, and convey unto" NPS.  There is not

11 a single phrase, let alone term or provision, that supports Fortinet's skewed reading that

12 NPS was required to accept the conveyance of the Assignment to become effective.  If

13 "acceptance" was required, it would be expressly stated in the Assignment.  It is not.

14 Moreover, the fact that the Assignment only required that ***only*** the assignor's "Signature

15 MUST be notarized," is further proof that the assignee's was ***not required***.

16            **5.    Parties' Intent Was To Convey The '601 Patent On April 30,**

17                   **2010**

18            It is NPS' position that its execution of the Assignment was not necessary to

19 effectuate the Assignment on April 30, 2010.  Even if the Court were to credit Fortinet's

20 argument that the "Accepted by:" language is part of the agreement – in the absence of

21 explicit language in the body of the assignment requiring assignee's acceptance I the pure

22 of this language is ambiguous at best.  When an agreement contains ambiguous language,

23 courts may consider extrinsic evidence to determine the parties' intent.

24            Here, it is clear that the parties intended that the Assignment be effective on April

25 30, 2010.  In addition to expressly stating that the Assignment "is executed . . . on [April

26 30, 2010], the Assignment does not expressly require the assignee's signature to be

27 notarized.  The inclusion of the signature line for the assignee was included solely because

28

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

it might have been needed for foreign patent prosecutions.  Tran Decl. ¶ 4-5; Ramde Decl. ¶ 35.  The reason is for some countries, the assignment must bear the signatures of both parties for recordation.  Ramde Decl. ¶ 35.  Since the document had the signature line for the assignee, Hannah Tran asked Mr. Cuke to sign the document on behalf of NPS to have an endorsed copy for NPS' files.  Tran Decl. ¶ 5.  Ms. Tran was not instructed by either Ramde or Lam to have Cuke sign the Assignment.  *Id.*  The intent was ministerial, not to effectuate or validate the Assignment.

### 6.       Federal Law Governs Assignments

Having determined that the document conveying the ownership of the '601 patent from MHP to NPS is an assignment, 35 U.S.C. § 261 controls the Court's analysis here. And courts have routinely held that, pursuant to 35 U.S.C. § 261, the effective date of an assignment is the date it is signed by the patent owner.  *See RAD Data Communications Inc. v. Patton Electronics* Co., 882 F. Supp. 351, 353 (S.D.N.Y. 1995) (Courts have held that Section 261 makes the effective date of an assignment the date that it was signed by the purported patent owner).  Therefore, the Assignment was effective as of April 30, 2010 and NPS had proper standing to bring this suit.

### 7.       The Case Law Cited By Fortinet Is Inapplicable

In support of its position, Fortinet cites to *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010), a case which is plainly distinguishable.  *Abraxis* is directed to the "'question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign is . . .a matter of federal law.'"  *Abraxis Bioscience, Inc.*, at 1363 (*quoting DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008).  Indeed, *Abraxis* dealt with contractual language stating actual transfer of the patents was to **occur in the future**.  The contractual language at issue in *Abraxis* states that the assignor "shall, or shall cause one or more of its Affiliates to, Transfer to the Purchaser . . . ."  *Abraxis Bioscience, Inc.*, at 1365.  "Shall . . .Transfer" is construed to be a mere promise to assign rights in the future, not an immediate transfer of

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

expectant interests.  *Abraxis Bioscience, Inc.*, at 1364-65.  The future transfer, *i.e.*, the future execution of an assignment by the *assignor*, of the asserted patents did no occur until after the suit was brought, therefore, there was no standing.  Here, the assignment language used in MHP's Assignment (MHP "does hereby sell, assign . . .")  effectuates an automatic transfer of rights to the '601 patent.  *See Abraxis Bioscience, Inc.*, at 1364 ("that the employee 'hereby conveys, transfers and assigns . . . all right, title and interest in and to Inventions' operated as an automatic assignment . . . .") (*quoting Speedplay, Inc. v. Bebop, Inc.*, 211, F.3d 1245, 1253 (Fed. Cir. 2000) (augmentation in the original).  Fortinet has made no argument that the April 30, 2010 Assignment is an obligation to assign, which it clearly is not, or was not executed by the assignor.  Therefore, the analysis and holding in *Abraxis* offers no support whatsoever for Fortinet's argument.

Fortinet's reliance on *Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL 314490 (N.D. Cal. Feb, 4, 2008) is equally misplaced.  *Quantum* deals with facts where the ***assignor/patent owner*** did not sign the assignment before the complaint was filed.  In that case, the asserted patent was first assigned by the inventor to one party (Party A) which subsequently assigned it to another party (Party B).  A third entity (Party C) acquired all the shares of Party B so that Party B was a wholly owned subsidiary.  Party C then granted Quantum an exclusive license to all patent owned by Party C and its subsidiaries.  However, Party B, though a subsidiary, was a separate corporate entity and neither assigned its patents to Party B nor signed the license agreement to Quantum.  Thus, Quantum did not have standing.  Here, unlike in *Quantum*, Fortinet is not contesting whether the assignor/patent owner, MHP, signed the Assignment before this action was filed.  It is arguing that the ***assignee*** did not sign the Assignment before this action was filed.  As explained above, the assignee's signature on an Assignment is not necessary for the execution of an assignment, and Fortinet provides no legal support for its position that it is.

**8.      April 30, 2010 Is Also The Effective Date Under Texas Law**

Although federal law clearly applies, Section 261 in particular, NPS notes that the Assignment would be effective on April 30, 2010 even if Texas law were to apply.  "Under Texas law, if there is no ambiguity in a contract, its construction and meaning become a question of law for the court to determine."  *Baghaei v. Appone, Inc.*, No. 2-08-413-CV, 2009 Tex. App. LEXIS 5345, * 10 (July 9, 2009) (citation omitted).[9]  Here, there is no ambiguity as the parties intended the Assignment to be effective on April 30, 2010.  The Assignment states that MPH "sell[s], assign[s], transfer[s], and convey[s] unto" NPS all "right, title, and interest" to the '601 patent.  Docket 207-14.  As if it is not clear enough, the Assignment reaffirms the intent of the assignor:

> Assignor owns, **and by this document assigns to Assignee**,
> all right, title, and interest to the ['601 patent].

*Id*. at NPS0050200.  The Assignment explicitly asserts that it "is executed . . . on [April 30, 2010]."  *Id*. at pg 2.  Only the assignor's signature is required. Furthermore, the parties intent was manifested during recordation with the USPTO which reflects April 10, 2010 as the execution date of the Assignment.  Lastly, and most compelling, this situation proves unique in that the same parties control both the assignor and assignee.   Mr. Ramde confirms that it was the intent of both parties to have the Assignment effective as of April 30, 2010. Decl. ¶ 39.

**B.      There is No Basis To Dismiss For Litigation Misconduct**

Tacitly conceding that there has been no "litigation misconduct" that meets the criteria for dismissal, Fortinet instead proffers a litany of optically prejudicial but irrelevant "facts." Namely, Fortinet alleges that NPS misrepresented its corporate status in Texas,

---

[9] The court's "primary concern when construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument."  *Id*. (citations omitted).  "The question as to whether or not the contract was made where the testimony is conflicting presents a fact issue and if it has been established, the construction of the contract is a law question."  *Vick v. McPherson*, 360 S.W.2d 866, 868 (Sept 17, 1962). "[I]t is well established that the effective date of an agreement is not dictated by the date on which it is signed if the parties intend otherwise."  *Versata Software, Inc. et al. v. Internet Brands, Inc., et al.*, 902 F.Supp.2d 841, 854 (Oct. 9, 2012).

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

served incomplete interrogatory answers, delayed discovery and asserted too many patent claims. [10]   Each of these allegations is demonstrably untrue and fails, individually and collectively, to justify dismissal.  And Fortinet fails to explain how NPS' conduct, when weighed together with all the factors that ***must*** be considered in a court's evaluation of misconduct, warrants the harsh sanction of dismissal.[11]

### 1.   NPS Is A Texas Corporation and Conducts Business There

Fortinet argues that NPS' headquarters located in Longview, Texas "is a litigation charade."  But NPS is a validly-formed Texas company and Fortinet offers no legal authority for finding that maintaining a Texas entity for conducting a technology and intellectual property-based business is per se misconduct in this District. As recognized by the Texas Secretary of State, NPS is a limited liability company legally and properly incorporated in Texas.  Section 5.201 of the Texas Business Organization Code sets forth the requirements for the designation and maintenance of a registered office.  It states that a registered office:

> i.   must be located at a street address where process may be personally served on the entity's registered agent;
>
> ii.   **<u>is not required to be a place of business</u>** of the filing entity or foreign filing entity; and
>
> iii.   may not be solely a mailbox service or a telephone answering service.

Bus. Orgs. § 5.201.

---

[10] Fortinet cannot introduce new allegations supposedly supporting the Motion in its reply brief, to which NPS would have no opportunity to respond.  As movant, Fortinet bears the burden on its motion to dismiss. *See Anheuser-Busch, Inc.*, 69 F.3d at 353-54.  For example, Fortinet did not provide any basis for finding that NPS's alleged 'misconduct' impairs Fortinet's ability to go to trial or threatens to interfere with the rightful decision of the case.  To the extent Fortinet attempts to backfill the deficiencies of its moving papers, NPS respectfully requests that the Court strike and not consider "new" arguments.

[11] All five factors weigh against dismissal.  *See e.g., Portney v. CIBA Vision Corp.*, 2008 U.S. Dist. LEXIS 106676 (C.D. Cal. Dec. 24, 2008).  Indeed (1) "there is no indication that the delay interferes with the public interest;" (2) "the Court finds that allowing this case to proceed would not unduly interfere with its docket;" (3) "even if there has been delay or prejudice, there is no indication that such delay or prejudice is sufficient to justify dismissal;" (4) "before punishing a plaintiff by dismissing its case, a court must make a "reasonable explanation of possible and meaningful alternatives;" and (5) "public policy always weighs against dismissal, especially where the claim has merit." *Id.*

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.

Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

Fortinet has already admitted in this litigation that NPS' incorporation and designation of a registered office was legal and legitimate.  *See* ECF No. 74, Part II.E.  Therefore, any and all of Fortinet's litigation misconduct allegations regarding false statements and representations of NPS' Longview, Texas office are mere window dressing and should be rejected.

Despite the fact that NPS is a valid Texas business entity as recognized by the Texas Secretary of State, Fortinet argues that NPS in engaged in a charade because its office is "a small file-cabinet room with no window, telephone, printer or even a chair." Motion To Dismiss at 20.  But Fortinet's accusations carry no legal weight.  Under the law, it is not an entity's physical business location – no matter where located – that is dispositive of its validity.  Indeed, the Texas law expressly provides that the entity's registered office need not be the place of doing business. Bus. Orgs. § 5.201 (ii).

NPS' office located in Longview, Texas, complies with Texas' Business Organization Code.  It is undisputed that it has an office, has an agent for service or process, has complied NPS has maintained all its corporate formalities, has conducted all its business as a corporate entity and has an actual physical address located at 3301 W. Marshall Ave., Suite 302, Longview, Texas.  Ramde Decl., ¶ 19.  As discussed more fully above, it is further beyond dispute that NPS has entered into an agreement whereby NPS sold a large patent portfolio to Advanced Interconnect Solutions LLC.,  and purchased a portfolio of patents and patent applications from National Hybrid, Inc.  Moreover, even if NPS *was* solely a business dedicated to litigating the '601 patent, that would be a valid reason to incorporate a business in a specific jurisdiction.  For example, United States District Court Judge Sue L. Robinson in addressing a motion to transfer, held:

> With respect to the characterization of [Plaintiff] as "simply a litigation vehicle for [Plaintiff]," many businesses and academic institutions enforce their patent rights through private companies (like [Plaintiff]); such a business strategy is not nefarious.  The court declines to treat such non-practicing entities as anything less than holders of

1
2
3
4

> constitutionally protected property rights, those rights having been legitimized by the Patent & Trademark Office. Therefore, the fact that a plaintiff is characterized as a "litigation vehicle" does not detract from the weight accorded to a plaintiff's choice of forum.

5
6

*Cradle IP, LLC v. Texas Instruments, Inc.*, No. 11-1254-SLR, 2013 U.S. Dist. LEXIS 19245, at *6-8 (D. Del. Feb. 13, 2013).

7
8
9

Fortinet neither provides any evidence nor cites any law or statute that compels a finding that NPS' headquarters in Longview, Texas is not legitimate as a matter of law or that this issue somehow has legal significance to the Motion.

10

**2.      Gregory Cuke's Role With NPS**

11
12
13
14
15
16
17
18
19
20

Fortinet argues that NPS, Ramde and Lam misrepresented the role of Gregory Cuke with NPS and that Ramde submitted a false declaration on that subject.  Tellingly, Fortinet does not pair up a supposedly "false" statement with contradictory evidence, but instead picks and chooses snippets of testimony that in their disembodied form give the false impression that Cuke's role with NPS has been misrepresented.  There is no dispute that Cuke was hired to and, in the course of that employment, did and does perform services for Unifi and NPS, including serving as Director of Business Development.  While he testified that he did not believe that he was an "employee" Cuke testified that he was "employed" by NPS.  *See* Cuke Tr., 9:15-10:10.  In fact, Mr. Cuke testified that he was employed at NPS' Director of Business Development:

21
22

> Q. Okay. How about this, it's true that you've been employed by NPS as the director of business development from sometime in 2010 up to and including today?

23

> A. I believe so, yes. (Docket 207-26, at 10:6-10)

24
25
26

> Q. (BY MR. NEUKOM) It's true, Mr. Cuke, that you have been employed by NPS as the director of business development since sometime in 2010 up to and including today?

27

> A. I believe that's accurate. (*Id*. at 19-23);

.                  .                  .

28

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

17

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

Q.   Okay. So your testimony is that while you have been employed by NPS from 2010 to present, you have not been an employee of NPS. Do I have that right?

A.   That's correct. (*Id.* at 11:6-9).

Mr. Cuke's testimony is consistent with his previous representations to this Court. In his declaration in support of NPS' opposition to defendants' motion to transfer venue to the Northern District of California ("NPS' Transfer Motion"), Mr. Cuke represented that he was "employed" by NPS, not an employee.  ECF No. 65.34.  Additionally, Mr. Cuke's testified that he worked for NPS since March, 2010 in the capacity of a sales and technical consultant and as Director of Business Development.

The statements made by Mr. Cuke during his deposition testimony and declaration are corroborated by Rakesh Ramde, the President and principal shareholder of Unifi, the parent corporation of NPS.  In his declaration also in support of NPS' Transfer Motion, Mr. Ramde represented that "[i]n May 2010, Network Protection Sciences . . . executed a separate engagement with Greg Cuke.  On behalf of Network Protection Sciences, Greg Cuke investigated potential transactions and executed engagement letters with third parties."  ECF No. 65-36, ¶ 10.  In an effort to persuade the Court, Fortinet has selectively ignored portions of Mr. Cuke's testimony in which he unequivocally testified that he was "employed" by NPS, instead focusing on sound bits in which he testified that he was not an "employee."  Regardless of the specific terminology, it is quite obvious that Mr. Cuke was working in Texas on NPS' behalf and being compensated by NPS.

Fortinet further argues that Mr. Cuke does not "help run the day-to-day activities of NPS" and does not have the authority to do anything.  That is simply inaccurate.[12]  Mr. Cuke was retained by NPS to investigate potential transactions and execute engagement letter and other agreements with third parties.  In doing so, Greg Cuke did, and still does, help run the day-to-day activities of NPS and Unifi.  Such activities include checking for any mail to NPS, being available to receive packages sent to NPS, executing various types

---

[12] *See* Ramde Decl., ¶ 22- 28.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

of agreements on behalf of NPS.  For example, Mr. Cuke was given the authority to pursue and execute patent sale agreement and assignment on behalf of NPS, and has done so.  *See* Section II. A. above and fn. 2 .

### 3. Fortinet's Discovery Issues Are Non-Prejudicial, Conclusory Attorney Arguments

Lastly, Fortinet raises three discreet discovery issues in a final attempt to conjure up support for its claims of misconduct.  Although Fortinet sees fit to cast NPS and its counsel in the role of villains, the substance of its arguments again fall short.  Even if Fortinet's unsupported claims were true, which they are not, it has failed to address -- let alone argue -- how it has been prejudiced in a manner that would merit a dismissal.

#### i. NPS' Interrogatory Responses

Fortinet alleges that NPS has provided "a cryptic response" to Fortinet's interrogatories regarding "the history of ownership, license, assignment, or other rights or interests of the '601 PATENT . . . ."  Motion at 21; *see also* ECF No. 207-22 at 7.  Fortinet takes particular offense to NPS' response regarding the assignment of the '601 patent from MHP to MPS.  Regarding that assignment, NPS stated:

> Mount Hamilton Partners, LLC signed an Assignment or Patent Rights on April 30, 2010 transferring the patent rights to Network Protection Sciences, LLC which owns all right title and interest in the patent-in-suit including the right to sue for past damages.

*Id*. at 9.  NPS' description is consistent with its descriptions of all the other transfers of rights to the '601 patent, yet Fortinet only takes issue with one particular statement. Fortinet describes it as "misleading" and "cryptic," but fails to explain why.  It seems to base its position on its own flawed allegations that NPS lacked standing when if filed suit, but as described above (*see infra* Part IV.A.), that is not the case.

Trying to comprehend Fortinet's issues with NPS' response ostensibly require a reading of tea leaves.  It is possible that Fortinet believes NPS' response is incomplete, but it is not.  If it was, Fortinet could have sought clarification or additional information from

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

19

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

NPS through methods employed by litigants regularly.  First, Fortinet could have sought a meet and confer, and if not satisfied with NPS' response, moved to compel.  Additionally, Fortinet could have sought the information from NPS witnesses.  For instance, Fortinet served a Rule 30(b)(6) deposition notice on NPS seeking "COMMUNICATIONS or correspondence between [NPS] and any third party concerning the '601 PATENT."  NPS designated Mr. Ramde, one of two principal shareholders of NPS, as its corporate witness.  Mr. Ramde also appeared in his individual capacity.  During his deposition, Fortinet did not ask him *a single question about the assignment of the '601 patent from MHP to NPS.*

Fortinet also deposed Wilfred Lam, NPS' other principal shareholder, and likewise did not ask him *a single question* about the assignment of the '601 patent from MHP to NPS.  Fortinet's failure to examine these witnesses about this subject matter is even more absurd given that Fortinet is aware that Messrs. Lam and Ramde are also the owners of the assignor MHP.  If Fortinet needed any additional information regarding the assignment of the '601 patent from MHP to NPS, it had two opportunities to elicit the information from the individuals that control both the assignor and assignee.[13]

It is difficult to reconcile Fortinet's failure to examine these deponents about this information with its emphatic arguments about the import of the information in support of its motion.  Although NPS is unable to decipher Fortinet's precise motivations, the most obvious conclusion is that Fortinet strategically decided to avoid examining Messrs. Lam and Ramde -- the principals of the assignor and assignee entities.  By doing so, Fortinet avoided eliciting sworn testimony regarding the Assignment that would have weakened its arguments.  Regardless of its motivations, it is apparent that Fortinet chose not to examine these deponents to gather the information it now complains was withheld by NPS.  Like its other "misconduct" arguments, Fortinet's claims in this regard do not support its motion.

---

[13] Amazingly, the Assignment was not even used as an exhibit during Fortinet' examination of these deponents.

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.

Case No. 3:12-CV-01106 –WHA

20

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii.        **NPS Timely Production Following Case Transfer**

Fortinet's allegation of delayed production of the assignment as grounds for dismissal is even more threadbare than its other arguments, particularly as Fortinet has never so much as filed a motion to compel discovery throughout this litigation. Nevertheless, Fortinet complains that NPS delayed production of the Assignment for more than two years.[14]   There was no delay, let alone any intent to delay.  A quick review of the procedural history of this action makes it quite apparent that NPS produced the Assignment in a timely manner consistent with the Court's orders and the Federal Rules.

NPS filed its complaint on July 6, 2010.  ECF No. 1.  Fortinet filed its Answer and Counterclaims on October 7, 2010 (ECF No. 37) and NPS answered the counterclaims on November 1, 2010.  ECF No. 47.  Prior to the scheduling conference held February 16, 2011, defendants filed their motion to transfer on January 13, 2011.  ECF No. 054.  The Memorandum Opinion and Order was issued on January 1, 2012 (ECF No. 121) and the case transferred on March 6, 2012. ECF No. 123.  During this time, NPS attempted to commence discovery.

However, Fortinet itself refused, taking the position that discovery should be put on hold "while the case does not belong to any particular court."  Ex. 4.  All defendants except Fortinet were dismissed from the case on June 13, 2012 (ECF No. 150) and the Case Management Scheduling Order governing discovery was entered on June 20, 2012. ECF No. 153.   One month later, NPS produced the Assignment.[15]   Given the procedural machinations that took place, and Fortinet's own refusal to commence discovery until the

[14] Fortinet also alleges that NPS intentionally delayed the Cuke deposition.  Fortinet's allegation is belied by its own conduct.  NPS originally noticed the deposition of Michael Xie, the key witness regarding NPS' willfulness allegations, on January 12, 2012.  Only after NPS re-noticed Mr. Xie deposition did Fortinet finally provide dates for his deposition on May 10, 2013.  Mr. Xie's deposition will take place on June 27, almost a year and a half after it was first noticed.

[15] To date, NPS has produced 55,256 pages of documents total, with all but 5210 pages (or 9.4% of the total NPS production) produced *prior* to  August 31, 2012.  Conversely, Fortinet has produced 191,084 pages, with 138,010 pages (over 72% of the Fortinet production) occurring *after* August 31, 2012.  In fact, Fortinet has made 12 separate productions this month alone.  It is untenable for Fortinet to argue that NPS' production on August 31, 2012 *when nearly three-quarters of its own production occurred after that date* and many of those productions have come on the eve of the close of fact discovery.

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

21

1   action was firmly before this Court, any complaints of delay are simply misleading and

2   self-serving.  To the extent there was delay, which NPS maintains there was not, it was of

3   Fortinet's own doing.  Further, as Fortinet and its counsel are quite aware, the Assignment

4   is and has been publicly available from the USPTO.[16]

5        Lastly, NPS is compelled again to point out that Fortinet has again failed to

6   address, let alone make, the requisite showing of prejudice and or any willfulness, fault, or

7   bad faith.  Under the circumstances, Fortinet's arguments regarding the purported delayed

8   production of the Assignment are entirely unpersuasive.

9        iii.    NPS Significantly Reduced The Number of Asserted

10              Claims Months Ago And Properly Identified The

11              Accused Instrumentality

12       Fortinet's last issue involves NPS' contentions.  First, Fortinet takes issue with the

13   number of patent claims asserted by NPS in this matter.  However, asserting infringed

14   claims is not misconduct and that it is typical to limit claims as litigation progresses and

15   the parties engage in discovery.  That is what NPS has done and continues to do so.  For

16   instance, prior to the Court's May 9, 2013 order (ECF No. 197), NPS reduced the number

17   of asserted claims to 15.  NPS has since reduced the number of asserted claims to five (5)

18   and will likely reduce the number further before trial.  *See* Docket 204.  In short, the Court

19   has already granted Fortinet relief on this issue.  Fortinet is complaining about an issue

20   which has already been considered by the Court and addressed by NPS well in advance of

21   this motion.  NPS has identified five (5) asserted claims, and Fortinet has not and cannot

22   claim prejudice.

23   _____

[16] In fact, it appears likely that Fortinet had obtained the Assignment from the USPTO as early as January 13,
24   2011 when defendants filed their motion to transfer venue to the Northern District of California.
     Specifically, Exhibit 7 to defendants' motion to transfer is the assignment of the '601 patent by Bevertec
25   CST, Inc. to MHP.  The exhibit reflects that it is an image from "REEL: 023254 FRAME: 0681," the
     reference number given the assignment when it was recorded with the USPTO.  Defendants' motion to
26   transfer also makes reference to the other assignments regarding the '601 patent.  Kopeikin Decl., Ex. 3
     Fortinet was part of a joint defense agreement at the time defendants' motion to transfer was filed.  Fortinet
27   even produced a copy of the assignment of the '601 patent from MHP to NPS with the REEL/FRAME
     number on it, however, it was produced on June 11, 2013, *nine months after* NPS produced the Assignment.
28   As such, it appears quite likely that Fortinet acquired the Assignment from the USPTO over two years ago.

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

In regard to alleged infringing products, the accused instrumentality is Fortinet's FortiOS platform.  The software is installed and run on the accused products.  NPS has provided detailed infringement claim charts where each element of each asserted claim is found in the accused instrumentality, including identifying exemplary source code for proxies imd and http and for virtual server daemon and wireless optimization daemon. NPS is conducting another inspection of Fortinet's source code, and to the extent additional information is identified, NPS will supplement it infringement contentions accordingly.

Fortinet's arguments to support its allegation of litigation misconduct clearly do not rise to the level of willfulness or bad faith; the characterization of these issues as litigation misconduct is the by-product of overzealous representation in the context of an adversarial litigation.  Fortinet's claims of misconduct are confounding and at times hypocritical; its own conduct during this litigation is open to the same criticisms it makes of NPS.  For example, Fortinet alleges that NPS' small Longview, Texas office is a sham, yet Fortinet itself is incorporated in a state where it has no office.  *See* Ex. _ at 171:3-8.  As another example, Fortinet alleges that NPS' delayed in producing documents on August 31, 2012, yet over 72% of its production occurred after that date.  Additionally, in support of its motion to transfer, Fortinet submitted the declaration of Todd Nelson that states:

> Fortinet maintains its source code for the accused products under very tight security at its headquarters in Sunnyvale, California, and at its offices in Vancouver, British Columbia, Canada.  ECF No. 54-5 ¶ 4.
>
> .          .              .
>
> In addition, substantially all of the testing, manufacturing (to the extent manufacturing is performed in the America's), and shipping of the accused products for the Americas region occurs at Fortinet's Sunnyvale headquarters.  ECF No. 54-5 ¶ 7.

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

23

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

However, NPS recently deposed Mr. Nelson and he testified that none of the actual manufacturing occurs in California.  Mr. Nelson defended his declaratory statement on the basis of the inclusion of conditional language.  In essence, Mr. Nelson declared that *if* Fortinet manufactured products in the U.S., they would be manufactured in California.  Likewise, in regard to Fortinet's source code, Mr. Nelson testified that the FortiOS software is not in California but located in British Columbia.  The hardware ASIC design software is kept in California.  Given that FortiOS is the root of NPS' infringement analysis, Mr. Nelson's position is tenable at best.  However, NPS has made no claims of litigation misconduct.  NPS understands that both it and Fortinet are both aggressively litigating in an effort to obtain favorable outcomes, and that missteps which do not materially effect the parties should not result in superfluous motion practice.  Even if the issues raised by Fortinet were accurate, which they are not, they would not be grounds for the harsh sanction of dismissal.

## V.       CONCLUSION

Federal District Court opinions have held that an assignment is effective as of the date they are signed by the assignor.  In this case, MHP executed the Assignment transferring all rights, including rights to sue for back damages, to the '601 patent to NPS on April 30, 2010.  Therefore, when NPS filed the Complaint against Fortinet on July 6, 2010 it was the rightful owner of the '601 patent and thus had standing to bring this suit.  Further, Fortinet clearly has failed to provide factual or legal support for its claims of litigation misconduct, let alone make any showing of prejudice or any conduct due to willfulness, fault, or bad faith.

Accordingly, NPS requests that the Court deny Fortinet's Motion in its entirety.

[SIGNATURES ON NEXT PAGE]

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1    Respectfully submitted,

2    Dated: June 27, 2013                    GCA LAW PARTNERS LLP

3

4                                            By: /s/ *Jill F. Kopeikin*
                                                 Jill F. Kopeikin
5                                                Valerie M. Wagner
                                                 GCA LAW PARTNERS LLP
6                                                1891 Landings Drive
                                                 Mountain View, California 94043
7                                                650-428-3900
                                                 650-428-3901 (fax)
8                                                jkopeikin@gcalaw.com
                                                 vwagner@gcalaw.com
9

10                                               Michael Cukor
                                                 Gibbons PC
11                                               One Pennsylvania Plaza, 37th Floor
                                                 New York, New York 10119-3701
12                                               212-613-2013
                                                 212-554-9658 (fax)
13                                               mcukor@gibbonslaw.com

14                                               Vincent E. McGeary
                                                 Gibbons P.C.
15                                               One Gateway Center
                                                 Newark, New Jersey 07102-5310
16                                               973-596-4837
                                                 973-639-6477 (fax)
17                                               vmcgeary@gibbonslaw.com

18                                           COUNSEL FOR PLAINTIFF
                                             NETWORK PROTECTION SCIENCES, LLC
19

20

21

22

23

24

25

26

27

28

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA                                   25

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1

2

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record for the Defendants are being served with

3

4

a copy of this document via electronic mail on this 27th day of June, 2013.

5

*/s/ Jill F. Kopeikin*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF NETWORK PROTECTION SCIENCES, LLC'S OPPOSITION TO DEFENDANT
FORTINET, INC.'S MOTION TO DISMISS.
Case No. 3:12-CV-01106 –WHA