JOHN M. NEUKOM (SBN 275887)
ANDREW M. HOLMES (SBN 260475)
WILLIAM O. COOPER (SBN 279385)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Tel: 415-875-6600
Fax: 415-875-6700
johnneukom@quinnemanuel.com
drewholmes@quinnemanuel.com
willcooper@quinnemanuel.com

Attorneys for Defendant
FORTINET, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK PROTECTION SCIENCES, LLC<br><br>   Plaintiff,<br><br>   v.<br><br>FORTINET, INC.<br><br>   Defendant. | No.  3:12-CV-01106-WHA<br><br>**FORTINET, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR (i) LACK OF STANDING AND (ii) LITIGATION MISCONDUCT**<br><br>Date: July 18, 2013<br>Time: 8:00 a.m.<br>Judge:  William H. Alsup |

04880.52079/5403474.2

Case No. 3:12-CV-01106-WHA
FORTINET, INC.'S REPLY I/S/O MOTION TO DISMISS FOR
(i) LACK OF STANDING AND (ii) LITIGATION MISCONDUCT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. NPS LACKS STANDING THREE DIFFERENT WAYS ................................................. 2

    A. Texas Law Governs The Alleged Assignment ........................................................ 3

    B. Under Texas Law And The Terms Of The Alleged Assignment, Transfer Of The '601 Patent Required Acceptance by NPS In The Form Of A Dated Signature ................................................................................................................... 4

    C. NPS Never Accepted the Alleged Assignment And Therefore Never Owned The '601 Patent—If Ever—Until 22 Days After Filing This Lawsuit ..................... 5

        1. NPS's "notary" argument violates basic logic ............................................. 6

        2. NPS's "foreign recordation" argument is not truthful ................................. 6

        3. NPS's "intent" and "effective date" argument cannot save standing ........... 7

    D. The Alleged Assignment Fails (Even Today) for Lack of Authorized Signatures ................................................................................................................. 8

    E. The Alleged Assignment Fails (Even Today) For Lack Of Consideration ............... 9

    F. Ramde And Lam Have No Excuse ......................................................................... 10

III. NPS HAS ENGAGED IN LITIGATION MISCONDUCT ............................................... 10

    A. Deceptive Litigation Conduct, Alone, Justifies Dismissal With Prejudice ............. 10

    B. NPS's Litigation Misconduct Just Got Worse ....................................................... 10

        1. To oppose Fortinet's motion, NPS just filed numerous exhibits that NPS never before produced in this case ...................................................... 10

        2. NPS also just made numerous factual assertions that NPS refused or failed to disclose in response to interrogatories ......................................... 11

    C. False Claims Of Texas "Headquarters" And A Texas "Employee" ....................... 11

    D. Incomplete Interrogatory Answers For Over Two Years ....................................... 12

    E. Strategic, Delayed Document Production .............................................................. 12

    F. Attempts to Delay—And Then Cancel—The Cuke Deposition ............................ 13

G. Improper, Harassing Infringement Contentions ........................................................ 13

H. NPS's "You Too" Accusations Are Irrelevant And Untrue ................................... 14

IV. DISMISSAL SHOULD BE WITH PREJUDICE AND ATTORNEY'S FEES ................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Point of Care Inc. v. Epocal, Inc.*,
666 F.3d 1299 (Fed. Cir. 2012) ..................................................................................... 2, 3

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F.3d 1359 (Fed. Cir. 2010) .......................................................................................... 4

*Akazawa v. Link New Tech.*,
520 F.3d 1354 (Fed. Cir. 2008) .......................................................................................... 4

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
269 F.3d 1369 (Fed. Cir. 2001) ........................................................................................ 15

*Englebrick v. Worthington Indus., Inc.*,
No. 8:08-cv-01296-CJC, 2013 WL 2007025 (C.D. Cal. May 13, 2013) ........................ 15

*Enovsys LLC v. Nextel Communications, Inc.*,
614 F.3d 1333 (Fed. Cir. 2010) .......................................................................................... 4

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
93 F.3d 774 *amended on reh'g in part*, 104 F.3d 1296 (Fed. Cir. 1996) ......................... 7

*H.R. Technologies, Inc. v. Astechnologies, Inc.*,
275 F.3d 1378 (2002) ...................................................................................................... 14

*Int'l Nutrition Co. v. Horphag Research Ltd.*,
257 F.3d 1324 (Fed. Cir. 2001) .......................................................................................... 4

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
109 F.3d 1567 (Fed. Cir. 1997) .......................................................................................... 4

*Mabbett v. Tandy Corp.*,
No. 88-1007, 847 F.2d 841, 1988 WL 30045 (Fed. Cir. 1988) ......................................... 4

*Mount Hamilton Partners, LLC v. OpenTable, Inc.*,
No. 3:09-cv-02074 (N.D. Cal.) (N.D. Cal. 2009) .............................................................. 1

*Scaife v. Associated Air Center Inc.*,
100 F.3d 406 (5th Cir. 1996) .............................................................................................. 5

*Stanwood Boom Works, LLC v. BP Exploration & Production, Inc.*,
No. 11-20511, 476 Fed. App'x 572 (5th Cir. 2012) .......................................................... 5

*Summers v. Mills*,
21 Tex. 77 (1858) ............................................................................................................... 5

*Textile Productions, Inc. v. Mead Corp.*,
134 F.3d 1481 (Fed. Cir. 1998) ........................................................................................ 14

04880.52079/5403474.2

-iii-    Case No. 3:12-CV-01106-WHA
FORTINET, INC.'S REPLY I/S/O MOTION TO DISMISS FOR
(i) LACK OF STANDING AND (ii) LITIGATION MISCONDUCT

*In re Westec Corp.*,
    434 F.2d 195 (5th Cir. 1970) ................................................................................................8

**<u>Statutes</u>**

35 U.S.C. § 261 ............................................................................................................................3, 4

35 U.S.C. § 285 ...............................................................................................................................15

Civil L.R. 7-3(a) .............................................................................................................................10

Fed. R. Civ. P. 12(b)(1) ....................................................................................................................2

## I. INTRODUCTION

This case illustrates how efforts at venue manipulation by a plaintiff can go awry and create foundational—Article III—problems for ensuing litigation. In this case, in 2010, Rakesh Ramde and Wilfred Lam sought to assert the '601 patent in the Eastern District of Texas, presumably for whatever reasons so many patent holders prefer that District. Docket No. 1. But Ramde and Lam faced obstacles to establishing venue in east Texas. First, they are Californians who maintain their offices here in Mountain View. Exh. 3 ("Mountain View, CA").[1] Second, in early 2010, they owned the '601 patent through an LLC (Mount Hamilton) that was already asserting a different patent in the Northern District of California and had already stated publicly that its place of business was in Mountain View.[2] As any patent litigator could discern, Mount Hamilton (in Mountain View) owned by Ramde and Lam (in Mountain View) suing Fortinet (in Sunnyvale) would not fare well if asked to defend venue 1,500 miles away in Marshall, Texas.

So—it now appears—Ramde and Lam hatched a plan in California to manufacture venue in east Texas. In April 2010, they formed NPS, a brand new LLC organized under Texas law. Kopeikin's Exh. 2 (Texas incorporation on April 6, 2010). In May 2010, they subleased a small, windowless room in east Texas for $100 a month and—despite failing to equip the room with a telephone or even a chair—ambitiously called it "headquarters" for NPS. Ramde's Exh. 2 (sublease executed May 1, 2010, for $100 in monthly rent). Also in May 2010, they asked a real estate broker in east Texas to serve as a supposed NPS "employee." Ramde's Exh. 5 (letter of May 6, 2010: "Your first project will be to assist us with evaluating a potential litigation against . . . Fortinet, Inc."). Finally, in July 2010, Ramde and Lam's assistant in California asked NPS's

---

[1] Citations to Exhs. 1-31 refer to the Neukom Declaration. Docket No. 207-1. Citations to Reply Exhs. 32-35 refer to the Neukom Reply Declaration, filed herewith. *See also* Neukom Reply Decl. at ¶¶ 2-3 (explaining the bases for filing a short reply declaration). Citations to exhibits filed by NPS are identified by NPS declarant. *E.g.*, Ramde's Exh. 1.

[2] Exh. 4 ("CourtLink" records indicating Mount Hamilton has asserted patent infringement claims in multiple lawsuits in this District against Google, Groupon and OpenTable); *see also Mount Hamilton Partners, LLC v. OpenTable, Inc.*, No. 3:09-cv-02074 (N.D. Cal.) (Complaint filed May 12, 2009; terminated July 7, 2011) at Docket 1-1 (identifying its "principal place of business at . . . Mountain View, CA").

supposed "employee" in east Texas to sign the Alleged Assignment, purportedly transferring the '601 patent from Mount Hamilton (in California) to NPS (in Texas). Exh. 13.

Even the terms of that document—the focus of Fortinet's challenge to NPS's standing—appear designed to manipulate venue. The Alleged Assignment (to Ramde and Lam's LLC: NPS) is identical in substance, type-face and formatting to the prior assignment of the '601 patent (to Ramde and Lam's LLC: Mount Hamilton) except that it was modified to (i) choose **Texas** law to govern; (ii) impose an obligation on the assignee, NPS, consenting to jurisdiction in **Texas**; and (iii) include a required "acceptance" by and signature block for the assignee—eventually executed by none other than NPS's "employee" in Longview, **Texas**. *Compare* Exh. 12, *with* Exh. 13.

These efforts at venue manipulation in 2010 have come back to haunt Ramde and Lam in 2013. The sham "Texas story" was exposed less than a month ago in a deposition that NPS at first refused to schedule, Exhs. 15-20, then delayed for months, *id.*, and then tried to cancel, Exh. 25. Furthermore, it turns out the edits made to the Alleged Assignment to make it a "Texas" assignment—changes between Exhs. 12 and 13—are case dispositive. The Alleged Assignment describes an exchange of "consideration" and a sale; requires NPS as the assignee to consent to Texas jurisdiction; and requires NPS to sign and date its consent. But NPS never did so (if ever) until July 28, 2010, which was 22 days after it filed this lawsuit. NPS therefore cannot meet its burden to show it had perfected title on the '601 patent when it filed this case on July 6, 2010.

This case was filed in 2010 under false pretenses, and it is now clear in 2013 that it is based on imperfect title to the asserted patent. It has nonetheless—for three years—taxed the resources of this Court, multiple federal judges in Texas, Fortinet, four other corporations initially named as co-defendants, and 20 or more Fortinet customers subpoenaed by NPS. Fortinet respectfully asks this Court not to tolerate the conduct of Ramde, Lam and their attorneys. Fortinet asks for dismissal with prejudice and attorney's fees.

## II. NPS LACKS STANDING THREE DIFFERENT WAYS

This case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because NPS cannot meet its burden to show ownership of the '601 patent on the date this case was filed. *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) (plaintiff's "burden to show

necessary ownership rights to support standing"). NPS cannot meet that burden at least three ways. The Alleged Assignment (i) did not take effect until July 28, 2010, if at all, 22 days too late for standing; (ii) fails for lack of authorized signatures; and (iii) fails for lack of consideration.

### A. Texas Law Governs The Alleged Assignment

NPS argues that federal law governs this Court's interpretation of whether the Alleged Assignment passed title to the '601 patent to NPS, and if so when. Opp. at 1 ("Ownership and assignment of patents is governed by Federal Law"). NPS further argues that the Alleged Assignment must satisfy only 35 U.S.C. § 261 to establish standing. *Id.* at 8-9 (arguing that § 261 requires an assignor's signature; "[t]he analysis ends here"); 12 ("§ 261 controls the Court's analysis here."). NPS supports this understanding of the law by relying upon a **single** 1995 decision from the Southern District of New York, by citing that decision repeatedly, and by mischaracterizing it as an "unequivocal" holding by "courts" (plural). Opp. at 6-7, 9 and 12.

Fortinet concedes that § 261—a recording statute—is relevant to certain questions of patent assignment. But this motion is not about whether the form of the Alleged Assignment is compliant with § 261. This motion is about whether the Alleged Assignment by its own terms and bearing the dated signatures that it does—even if facially satisfying § 261—has ever conveyed legal title and ownership of the '601 patent to NPS and, if so, when.

These are questions of **patent ownership** that must be resolved by the terms of the Alleged Assignment as interpreted under the **state law** that governs the document. The Federal Circuit has made this clear. For example, in *Abbott Point of Care*, the plaintiff's standing was challenged. The plaintiff in turn "assert[ed] that the 1984 Agreement [and] the 1999 Consulting Agreement gave it ownership of the [asserted] patents." 666 F.3d at 1302. In affirming the district court's dismissal for lack of standing, in 2012, the Federal Circuit briefly recognized § 261. *Id.* But the court nowhere referred to that recording statute as being relevant to the question of whether the plaintiff **owned** the asserted patents and therefore had standing. Instead, the court resolved the question of patent ownership—and standing—by reference to the terms of the disputed assignment documents and by interpreting the effect of those terms under **state law**. *Id.* ("State law governs contract interpretation. . . . Thus, the law of the state of New Jersey governs these [patent

assignment] Agreements.") (emphasis added).[3] In this case, the Alleged Assignment chooses Texas law. Exh. 13 at 3.

### B. Under Texas Law And The Terms Of The Alleged Assignment, Transfer Of The '601 Patent Required Acceptance by NPS In The Form Of A Dated Signature

NPS argues the Alleged Assignment is a unilateral assignment from Mount Hamilton, only, and not a mutual agreement between Mount Hamilton and NPS. Opp. at 10-11. NPS further argues that because the Alleged Assignment is a unilateral assignment from Mount Hamilton, NPS never had to sign or accept the document for it to take effect. *Id.* at 11. But the express terms of the Alleged Assignment contradict these arguments by NPS. The document repeatedly indicates that the '601 patent is assigned only pursuant to a mutual exchange of promises and consideration, and requires acceptance by NPS. **First**, the opening phrase of the document provides that the '601 patent is being assigned only in exchange "[f]or good and valuable consideration." Exh. 13 at 1. **Second**, the document describes a sale and assignment, not just an assignment. *Id.* ("does hereby sell, assign, transfer, and convey"). **Third**, the document imposes specific obligations not just on Mount Hamilton but also on NPS, a tell-tale sign of an agreement requiring mutual assent, not unilateral assent from just one party. *Id.* at 3 ("Assignee [NPS] irrevocably consents to the

---

[3] *See also Enovsys LLC v. Nextel Communications, Inc.*, 614 F.3d 1333, 1342 (Fed. Cir. 2010) (resolving a challenge to standing by reference to California law; "Who has legal title to a patent is a question of state law."); *Akazawa v. Link New Tech.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008) ("Our case law is clear that state law, not federal law, typically governs patent ownership."); *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1329–30 (Fed. Cir. 2001) ("[T]he question of who owns patent rights, and on what terms, typically is a question exclusively for state courts and not one arising under United States patent laws."); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997) (same); *Mabbett v. Tandy Corp.*, No. 88-1007, 847 F.2d 841, 1988 WL 30045, at *2 (Fed. Cir. 1988) (unpublished) (holding that the "argument that federal law, specifically 35 U.S.C. § 261 (1982), governs the assignment of patents and entirely preempts state law in this area is misplaced").

The only exception to this well-established principle—that state law controls interpretation of a patent assignment when it is challenged on a motion to dismiss for lack of standing—is for a narrow issue that is not relevant to Fortinet's motion, namely whether a patent assignment passes title immediately or simply promises to pass title in the future. *See, e.g., Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364-65 (Fed. Cir. 2010) (holding that state law generally governs patent assignments, unless the issue is unique to the "promise to assign" question).

jurisdiction" of Texas.).  **Fourth**, the document requires acceptance by NPS right on its face with the words "Accepted by:" and a type-face signature block for "NETWORK PROTECTION SCIENCES, LLC." *Id.* at 4.  It even requires NPS to **date** its acceptance. *Id.* ("Date:").

Given these provisions of the Alleged Assignment, Texas law considers the document a mutual agreement—not a unilateral assignment—and therefore requires acceptance by NPS before it could take effect. *Summers v. Mills*, 21 Tex. 77, 87 (1858) (explaining that a contract for sale requires offer and acceptance).  The Alleged Assignment, in turn, specifies how NPS may indicate its acceptance, namely with a dated signature. Exh. 13 at 4.  Texas law provides the same. *Stanwood Boom Works, LLC v. BP Exploration & Production, Inc.*, No. 11-20511, 476 Fed. App'x 572, 574-75 (5th Cir. 2012) (explaining that signature and delivery are typically required under Texas law to prove assent); *Scaife v. Associated Air Center Inc.*, 100 F.3d 406, 410-11 (5th Cir. 1996) (finding that unsigned signature blocks support summary judgment of no contract).

NPS nonetheless asks the Court to construe the "assignment" language in the Alleged Assignment to support its theory that the document describes a unilateral assignment.  Opp. at 10 (citing this language from page 2 of the Alleged Assignment: "by this document assigns to Assignee").  But Fortinet acknowledges that language, and does not deny that the Alleged Assignment **includes** a patent assignment.  Of course it does.  It includes a patent assignment pursuant to an exchange of promises and consideration, which exchange requires mutual assent.

There should be little debate about whether the document requires acceptance by NPS.  If it did not—which it does—then it appears Mount Hamilton's signature alone had the power to force a separate legal entity, NPS, to "irrevocably consent" to the law and courts of Texas without NPS ever having a say in the matter.  Exh. 13 at 3.

**C.  NPS Never Accepted the Alleged Assignment And Therefore Never Owned The '601 Patent—If Ever—Until 22 Days After Filing This Lawsuit**

Texas law governs the Alleged Assignment, *see* II(A), above, and both Texas law and the terms of the Alleged Assignment require NPS's signed and dated acceptance of the Alleged Assignment before it could take effect, *see* II(B), above.  But no one even purporting to represent NPS signed or accepted the agreement until July 28, 2010, which was 22 days after this lawsuit

04880.52079/5403474.2

-5-  Case No. 3:12-CV-01106-WHA
FORTINET, INC.'S REPLY I/S/O MOTION TO DISMISS FOR
(i) LACK OF STANDING AND (ii) LITIGATION MISCONDUCT

was filed. *Compare* Docket No. 1 (complaint filed on July 6, 2010), *with* Exh. 13 at 4 (Alleged Assignment signed by Cuke on July 28, 2010). NPS therefore lacked standing on the date this case was filed, and the case should be dismissed.

### 1. NPS's "notary" argument violates basic logic

NPS observes that the Alleged Assignment requires a notary seal for Mount Hamilton's signature and yet does **not** require a notary seal for NPS's signature. Based on that comparison, NPS argues that the Alleged Assignment must require no NPS signature **at all**. Opp. at 11. That makes no sense. The document still calls for an NPS signature, it simply does not require it to be notarized. Exh. 13 at 4. No such NPS signature existed (notarized or not) until 22 days after suit.

### 2. NPS's "foreign recordation" argument is not truthful

NPS argues that "[t]he inclusion of the signature block for the assignee [NPS] was included **solely** because it might have been needed for foreign patent prosecutions." Opp. at 11-12 (emphasis added). That argument is contradicted by the terms of the Alleged Assignment as interpreted under Texas law. *See* II(B), above.

This "foreign recordation" argument is also contradicted by other evidence available to this Court. **First**, the assignment that Ramde and Lam prepared for their acquisition of the '601 patent through Mount Hamilton in 2006—almost identical to the Alleged Assignment in substance, typeface and formatting—covers the exact same three patents/applications identified in the Alleged Assignment, namely the '601 patent plus its European and Canadian counterparts. *Compare* Exh. 12 at 2, *with* Exh. 13 at 2. And yet that 2006 assignment contains no signature block for the assignee. If Ramde and Lam believed that a patent assignee's signature was required for foreign recordation, they would have included an assignee signature block on the prior assignment for the same three patents. They did not. *Compare* Exh. 12 at 4, *with* Exh. 13 at 4.

**Second**, in response to NPS's Opposition, Fortinet counsel has just checked the status of both foreign counterparts that are listed on page 2 of the Alleged Assignment. The European patent was "deemed to be withdrawn" in 2003—three years before Ramde and Lam even acquired the '601 patent through Mount Hamilton, and seven years before the Alleged Assignment to NPS—and never even made it past the application stage. Reply Exh. 32. The Canadian patent is a

little better—it at least exists as an issued patent. But to this day it remains assigned to **Mount Hamilton**, not NPS, according to the Canadian patent office. Reply Exh. 33. NPS is arguing it included an assignee signature block "solely" to record its ownership of the patent's counterparts in Europe and Canada, and yet (i) the European counterpart has not existed even as an application for 10 years and (ii) NPS has never even recorded its supposed patent ownership in Canada. This "foreign prosecution" argument appears to be yet another false statement filed by NPS in this case.

### 3. NPS's "intent" and "effective date" argument cannot save standing

Finally, NPS argues that it was the "intent" of "the parties" to make the Alleged Assignment "effective" as of April 30, 2010, regardless when signed by NPS. Opp. at 11-12. This argument has two problems. **First**, the exhibits that Ramde just filed with this Court to oppose Fortinet's motion make perfectly clear that attorneys Ramde and Lam know how to specify an "effective" date in a legal instrument if intending to do so. *See* Ramde's Exhs. 2, 6, 7, 9, and 12-14.[4] Those are **seven** written agreements that Ramde and Lam executed in the past through their numerous patent-holding LLCs, including patent assignments. All seven of those instruments specify an "effective date." The Alleged Assignment does not.

**Second**, even if the Court believed NPS's insistence that it intended for the Alleged Assignment to have an "effective date" months before NPS ever executed the document, the Federal Circuit has held that patent plaintiffs cannot remedy standing problems by executing patent assignments with backdated "effective" dates. *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779 *amended on reh'g in part*, 104 F.3d 1296 (Fed. Cir. 1996) (holding that a *nunc pro tunc* assignment was "not sufficient to confer standing . . . retroactively").

---

[4] Ramde's Exh. 2 specifies an "effective" date of May 1, 2010. Ramde's Exh. 6 at 1 specifies that "[t]he effective date of this Agreement shall be . . . " Ramde's Exh. 7 defines an "Effective Date" on the first page. Ramde's Exh. 9 defines its effective date: "effective as of." Ramde's Exh. 12 states on the first page it is "effective on . . . " Ramde's Exhs. 13 and 14 each define the "Effective Date" on the last page.

### D. The Alleged Assignment Fails (Even Today) for Lack of Authorized Signatures

NPS cannot prove that the Alleged Assignment has ever been effective—even today—because NPS has not timely offered evidence that either individual who signed the agreement had the authority to bind the company he purported to represent. *See In re Westec Corp.*, 434 F.2d 195, 200 (5th Cir. 1970) (holding that a party relying on a written contract must prove not only its execution but also "the authority of the agent through whom it is claimed the corporation acted"); *id.* (holding that to prove an agent's authority to bind the principal, an act of the principal explicitly or implicitly conveying such authority is required).

For NPS, Cuke signed the Alleged Assignment, but was not authorized to enter into any such agreement unless previously instructed to do so directly or indirectly by Ramde and Lam. Exh. 26 at 29:11-18 and 34:7-10. Cuke could not remember who provided him that authority for the Alleged Assignment. *Id.* at 87:5-6. In the Opposition, NPS explains that Cuke has executed other agreements for NPS. Opp. at 4 n.2. That proves nothing but that (possibly) Ramde and Lam authorized Cuke to sign other, specific documents on other dates, albeit not the Alleged Assignment. NPS further explains that it was an assistant to Ramde and Lam in Mountain View, Ms. Hannah Tran, who instructed Cuke to sign the document, although she was never authorized to do that. Opp. at 12 ("Ms. Tran was not instructed by either Ramde or Lam to have Cuke sign the Assignment."). It therefore appears that the only two people who "authorized" NPS's acceptance of the Alleged Assignment were an assistant in Mountain View and a real estate broker in east Texas, neither of whom claims to have authority to bind the company.

As for Mount Hamilton's supposed representative, Mark Figuereido, NPS has explained in the Opposition that his authority to execute the Alleged Assignment on April 30, 2010, derives from a "Consent" signed by Ramde and Lam. Ramde's Exh. 9. NPS may not rely on that "Consent" because it was never produced to Fortinet prior to NPS's Opposition brief, *see* III(B)(1), below, nor was it mentioned in NPS's responses to two interrogatories asking for this very information. Exhs. 14 and 21.

04880.52079/5403474.2

-8- Case No. 3:12-CV-01106-WHA
FORTINET, INC.'S REPLY I/S/O MOTION TO DISMISS FOR
(i) LACK OF STANDING AND (ii) LITIGATION MISCONDUCT

### E. The Alleged Assignment Fails (Even Today) For Lack Of Consideration

NPS does not deny that the Alleged Assignment describes an exchange of consideration in its opening sentence. Exh. 13 at 1. Indeed, in three separate places in the Opposition brief, NPS appears to represent that there was in fact consideration conveyed from NPS to Mount Hamilton.[5]

**But NPS has never identified what consideration NPS conveyed to Mount Hamilton in exchange for the '601 patent.** NPS was asked to identify this consideration in two interrogatories over multiple years of litigation, and failed to provide any answer. Exhs. 14 and 21. NPS was asked to supplement its interrogatory answers specifically to identify the consideration (such as the dollar amount) NPS provided to Mount Hamilton in exchange for the '601 patent. Exh. 23 at 4. NPS counsel promised to "investigate" and to provide a supplemented interrogatory answer by May 31, 2013, yet did not to do so. Exh. 24.

Not only has NPS failed to identify any consideration paid by NPS for the '601 patent, NPS just recently filed with the Court a "Unanimous Written Consent" that was supposedly adopted by Mount Hamilton on some unknown date, but with a purported "effective" date of April 29, 2010. Ramde's Exh. 9. That "Consent" was never produced by NPS in this litigation until the morning that NPS filed its Opposition. *See* III(B)(1), below. But more importantly, that "Consent" indicates there was **no consideration at all**. It suggests, instead, that Mount Hamilton resolved to assign the '601 patent to NPS only because it was "in the best interests" of Mount Hamilton. If this "Consent" is accurate, it proves conclusively that the Alleged Assignment is fraudulent, because it shows that NPS is relying on a written document (the Alleged Assignment) to show standing which describes a fake sale that never occurred.

NPS either paid no consideration for the '601 patent, or has refused to identify what that consideration was. Either way, the Alleged Assignment requires it, Texas law requires it, and NPS cannot now meet its burden to prove it. NPS therefore lacks standing.

---

[5] Opp. at 9 ("MHP's Assignment of the '601 patent acknowledged receipt of consideration"); *id.* ("Mr. Figueiredo's notarized signature on the Assignment of the '601 patent is an acknowledgement of receipt of consideration"); *id.* at 10 ("MHP concedes that it was . . . assigning the patent rights for 'good and valuable consideration . . .'").

04880.52079/5403474.2

-9- Case No. 3:12-CV-01106-WHA
FORTINET, INC.'S REPLY I/S/O MOTION TO DISMISS FOR
(i) LACK OF STANDING AND (ii) LITIGATION MISCONDUCT

### F. Ramde And Lam Have No Excuse

Fortinet's motion notes that Ramde and Lam are admitted to the California bar, and that **since 2010** they have used LLCs they own to become serial patent litigants—having used 17 law firms to assert patents against 40+ defendants in a dozen or more cases. Mot. at 3. The Opposition concedes these facts in gentle fashion by asserting that no such "entity . . . ever filed any litigation prior to 2009." Opp. at 3. The Opposition furthermore discloses that Ramde and Lam are unusually experienced in executing patent transfers. *Id.* (citing "one hundred (100) patent transactions" and "fifty-seven (57) patent portfolio sales"). Especially given that background, these individuals have no excuse for failing to perfect title on the '601 patent before filing suit, as described above, nor for engaging in litigation misconduct, as described below.

## III. NPS HAS ENGAGED IN LITIGATION MISCONDUCT

### A. Deceptive Litigation Conduct, Alone, Justifies Dismissal With Prejudice

NPS argues that dismissal for litigation misconduct is inappropriate because Fortinet does not address the five factors relevant to that request for relief. Opp. at 15. But Fortinet acknowledged those factors. Mot. at 19 & 19 n.5. Fortinet also cited to case law holding that false statements; willful deception; and false, misleading or incomplete discovery answers satisfy the test. *Id.* at 19 (collecting cases). NPS's Opposition appears to ignore that case law.

### B. NPS's Litigation Misconduct Just Got Worse

NPS violated the Local Rules when it filed its Opposition on January 28, 2013.[6] Plus, NPS's late-filed Opposition relies on (i) documents never before produced in this case; and (ii) factual assertions withheld from interrogatory answers.

#### 1. To oppose Fortinet's motion, NPS just filed numerous exhibits that NPS never before produced in this case

NPS furthermore engaged in misconduct, with the Opposition, by sandbagging Fortinet with numerous documents that were attached to the Ramde Declaration and yet had **never before**

---

[6] Civil L.R. 7-3(a) ("The opposition must be filed and served not more than 14 days after the motion was filed."); Docket No. 207 (indicating this motion was filed June 13, 2013); Docket No. 212 (indicating NPS's Opposition was filed 15 days later, albeit shortly after midnight).

**been produced** in this case. For example, Ramde's Exh. 9 purports to be a "Consent" by Ramde and Lam, with undated signatures, supposedly authorizing a historical transfer of the '601 patent to NPS. *See also* Ramde's Exhs. 2, 3, 5-7, and 12-13. **NPS never produced these documents.** Neukom Reply Decl. at ¶¶ 6-9. It is especially inexcusable that Ramde would attach these exhibits to his declaration given that Fortinet went out of its way in January 2013 to subpoena Ramde, personally, for these documents. Reply Exh. 34 (January 24, 2013, subpoena for Ramde). NPS counsel assured Fortinet that all such documents had already been produced or would be produced by NPS. Reply Exh. 35. Apparently that was untrue.

### 2. NPS also just made numerous factual assertions that NPS refused or failed to disclose in response to interrogatories

With the Opposition, NPS has also just put before the Court a series of factual assertions about the circumstances supposedly surrounding the Alleged Assignment that NPS should have (if true) provided in response to interrogatories. But NPS has refused to provide any of this information in response to on-point interrogatories as far back as 2011. *See* III(D), below.

### C. False Claims Of Texas "Headquarters" And A Texas "Employee"

To manipulate venue, NPS previously stated it had "offices" and "headquarters" and was "based" in Longview, Texas, which physical "presence" was so substantial that it constituted a "local interest" in east Texas. Docket No. 65 at 1, 8 and 15. Fortinet has shown those statements to be false. Mot. at 10-11 (citing Cuke testimony of a windowless room without a telephone or even a chair). In the Opposition, NPS responds that it is "a valid Texas business entity as recognized by the Texas Secretary of State." Opp. at 16-17. So be it. That explanation is substantially different than prior, untrue statements about "headquarters."

Likewise, NPS has claimed "a Texas employee." Docket No. 65 at 1. But Cuke denied he is an employee four times. Mot. at 8-9. NPS clarifies in the Opposition that Cuke is nonetheless "employed" by NPS—even if not an "employee"—and that he really does "help[] run the day-to-day business" of the company. Opp. at 18. That cannot be accurate given that Cuke testified he does not even know what the company does on a day-to-day business. Exh. 26 at 38:24-39:12. He furthermore testified that to whatever extent he is "employed" by NPS, that work is so

insubstantial that he cannot even remember the last time he asked to be or was in fact paid by NPS. *Id.* at 23:1-6.

### D. Incomplete Interrogatory Answers For Over Two Years

In 2011, NPS was asked in an interrogatory to describe the '601 patent's transfer from Mount Hamilton to NPS—the terms, consideration paid, and circumstances of the execution of any assignment document. Exh. 14 at 4. In early 2013, NPS was asked the same question in greater detail. Exh. 21 at 5. NPS said nothing but that "Mount Hamilton . . . signed an Assignment . . . on April 30, 2010." *Id.* NPS was asked to supplement that answer; promised to "investigate" and supplement by May 31, 2013; and yet never did so. Exhs. 23-24. Now, in the Opposition, NPS states summarily that its prior interrogatory answers were in fact complete. Opp. at 19. That cannot be the case given that NPS's Opposition and two declarations filed with it are rife with assertions of fact (albeit at times contradictory and insufficient to show standing) about the execution of the Alleged Assignment. Plus, to this day, even in the Opposition, NPS refuses to identify the "consideration" that NPS supposedly paid to acquire the patent. Exh. 13 at 1.

Even so, NPS states that "Fortinet could have sought clarification" to get more information in response to the interrogatories, such as a "meet and confer." *Id.* at 19-20. But that is **exactly** what Fortinet did. Exh. 23 (Fortinet asking for additional information); Exh. 24 (NPS noting the parties' May 20 "meet and confer" and promising to "investigate" its deficient interrogatory answers on this very issue). NPS still did not provide any additional information.

### E. Strategic, Delayed Document Production

NPS does not deny that—while it filed this case on July 6, 2010—it waited until August 31, 2012, to produce a copy of the Alleged Assignment. NPS argues, however, that its 26-month delay in producing the Alleged Assignment was harmless because Fortinet could have downloaded the assignment from public PTO files in January 2011. Opp. at 22 n.16. That argument is absurd. NPS did not even file the Alleged Assignment with the PTO until July 2011. Ramde's Exh. 8 (specifying a PTO "recordation date" of July 26, 2011).

NPS next argues that "[a] quick review of the procedural history" shows that "NPS produced the Assignment in a timely manner." Opp. at 21. That is not right. Under the

"procedural history" of this case, it was filed in east Texas. Docket No. 1. In that court, the parties were required to produce all "relevant" evidence without even being asked to do so. Docket No. 76 at ¶ 3. NPS purported to do that in April 2011. But the Alleged Assignment in April 2011 had not even been recorded with the PTO, Ramde's Exh. 8 (recordation date of July 26, 2011) and it was not included in NPS's initial production in this case. Fortinet concedes that parties may debate, in good faith, whether certain documents must be produced without request under the east Texas rules. But it is difficult to imagine a good-faith basis for NPS to wait **26 months** to produce the Alleged Assignment, the single document purportedly showing its standing to assert the only patent in the case.

Finally, NPS's document production strategy has just become even more troublesome with the Opposition given that NPS included numerous documents as exhibits to the June 28, 2013, Ramde Declaration which have never been produced in this case. *See* III(B)(1), above.

### F. Attempts to Delay—And Then Cancel—The Cuke Deposition

NPS does not deny that it refused, at first, to accept service of a subpoena for Cuke's deposition, nor that NPS counsel then refused to provide a date for Cuke's deposition for months, nor that NPS counsel then tried to cancel the deposition by "removing" Cuke from the case just eight days before his deposition. Mot. at 6-8; Exhs. 15-20 and 25. NPS responds only—in a footnote—that Fortinet was slow to produce Michael Xie (Fortinet's co-founder) for a deposition. That "you too" response is both irrelevant and untrue. Neukom Reply Decl. at ¶ 13-16.

### G. Improper, Harassing Infringement Contentions

The Court is already familiar with the expanding and contracting claim assertions that NPS has presented to Fortinet over the course of the litigation. Docket No. 197 at 3. But the problems with NPS's claim assertions are not cured just by limiting the number of claims; the problem extends to the set of products that are accused as well.

NPS's infringement contentions have targeted **over 70 different Fortinet products**. NPS has not provided claim charts for any of those 70+ different products. Instead, NPS has served a list of all such products in "Exhibit B" to its infringement contentions—nothing but a list of product names. Exh. 30 (at "Exhibit B," located at Docket No. 207-31, numbered by ECF with

04880.52079/5403474.2

-13- Case No. 3:12-CV-01106-WHA
FORTINET, INC.'S REPLY I/S/O MOTION TO DISMISS FOR
(i) LACK OF STANDING AND (ii) LITIGATION MISCONDUCT

page numbers 77-80). Fortinet has explained why that bare list of product names does not satisfy the Patent Local Rules. Exh. 31 at 2-4; Mot. at 22-23. In the Opposition, NPS now states that "NPS is conducting another inspection of Fortinet's source code" and "will supplement it [sic] infringement contentions accordingly." Opp. at 23. That is an audacious statement given that fact discovery is now closed and NPS's expert report on infringement was served two days ago.

Fortinet has raised this issue not just because NPS's deficient infringement contentions—targeting 70+ Fortinet application products while providing claim charts for none—constitute misconduct. They also demonstrate the burden that this litigation has put on Fortinet. Fortinet has now spent three years defending 5 to 50+ patent claims being asserted against 70+ products—most of the company's product line. That misconduct has put a substantial burden on Fortinet. NPS has created that burden with unwieldy infringement contentions for a patent that—due to efforts at venue manipulation gone wrong—NPS cannot prove it owned when it filed suit.

### H. NPS's "You Too" Accusations Are Irrelevant And Untrue

NPS argues that Fortinet improperly delayed scheduling the deposition of Fortinet's co-founder, Michael Xie. Opp. at 21 n.14. That is untrue. Neukom Reply Decl. at ¶¶ 13-16. NPS also suggests—although stops short of asserting—that Fortinet's in-house counsel Todd Nelson (Vice President, Legal) submitted a misleading declaration in this case in 2011. That suggestion is irresponsible and untrue, and Fortinet and Mr. Nelson stand ready to defend the declaration's accuracy should NPS ever challenge it with something more than *ipse dixit*.

## IV. DISMISSAL SHOULD BE WITH PREJUDICE AND ATTORNEY'S FEES

Fortinet has asked for dismissal with prejudice based on lack of standing. *See Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998) (affirming dismissal with prejudice of a patent claim because the plaintiff "had its chance to show standing and failed"); *see also H.R. Technologies, Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1385 (2002) (holding that *Textile Productions* does not create a "broad rule **requiring** that all dismissals of patent infringement actions for lack of standing be with prejudice" but affirming "the general principle that the decision whether such a dismissal should be with or without prejudice is **within the discretion of the district court**") (emphasis added). Fortinet has asked for the same—dismissal

1  with prejudice—based on litigation misconduct that has subjected Fortinet to **three years** of

2  litigation over a patent (i) that NPS has never owned, and (ii) whose ownership (or lack thereof)

3  NPS has attempted to disguise by intentionally withholding evidence. *Aptix Corp. v. Quickturn

4  Design Sys., Inc.*, 269 F.3d 1369 (Fed. Cir. 2001) (affirming this Court's dismissal and award of

5  fees for litigation misconduct); *Englebrick v. Worthington Indus., Inc.*, No. 8:08–cv–01296–CJC,

6  2013 WL 2007025, at *8 (C.D. Cal. May 13, 2013) (collecting cases). Fortinet has also asked for

7  attorney's fees and costs under 35 U.S.C. § 285. NPS ignored those issues of prejudice and

8  attorney's fees.

DATED: July 5, 2013

Respectfully submitted,

/s/ John M. Neukom

John M. Neukom (SBN 275887)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
Tel: 415-875-6600
Fax: 415-875-6700
johnneukom@quinnemanuel.com

*Attorneys for Defendant FORTINET, INC.*

04880.52079/5403474.2

-15-   Case No. 3:12-CV-01106-WHA
FORTINET, INC.'S REPLY I/S/O MOTION TO DISMISS FOR
(i) LACK OF STANDING AND (ii) LITIGATION MISCONDUCT