**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETWORK PROTECTION SCIENCES, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>FORTINET, INC.,<br><br>    Defendant.<br>                                  / | No. C 12-01106 WHA<br><br>**OMNIBUS ORDER DENYING SUMMARY JUDGMENT, DENYING MOTION TO STRIKE REPORT AND TESTIMONY OF DR. KEROMYTIS, AND GRANTING MOTION TO STRIKE REPORT AND TESTIMONY OF MR. JAROSZ** |

**INTRODUCTION**

In this patent infringement action involving network firewalls, defendant moves for summary judgment and moves to strike the reports and testimony of plaintiff's infringement and damages experts. For the reasons stated below, the motion for summary judgment is **DENIED**. The motion to strike the expert report and exclude the testimony of plaintiff's infringement expert is **DENIED**. The motion to strike the expert report and exclude the testimony of plaintiff's damages expert is **GRANTED**.

**STATEMENT**

**1. THE PARTIES.**

Fortinet was founded in 2000 and is headquartered in Sunnyvale. It manufactures and sells network security products. Fortinet employs over 2000 people, is publicly traded, and serves enterprises and government entities worldwide.

Plaintiff Network Protection Sciences (NPS) is one of 22 companies set up by Innovation Management Sciences, LLC. NPS appears to have virtually no assets apart from asserting the patent at issue in this action: U.S. Patent No. 5,623,601.

**2. THE '601 PATENT.**

The '601 Patent, entitled "Apparatus and Method for Providing a Secure Gateway for Communication and Data Exchanges Between Networks," was filed on November 21, 1994, and issued on April 22, 1997. николай NPS is the most recent of a long string of owners. In 2011, Fortinet filed a request for reexamination, and in May 2012 the USPTO issued a reexamination certificate for the patent confirming all claims (1–41) and adding new claims (42–59). The technology at issue in this action relates to firewall technology intended to improve network security and user convenience. NPS currently alleges infringement of claims 19, 29, and 57. Claims 19 and 29 are independent claims. Claim 57 is dependent on claim 19.

**3. THE ACCUSED PRODUCTS.**

NPS accuses over 70 Fortinet applications and products of infringing five asserted claims in the '601 patent. NPS's infringement contentions are primarily crafted around a computer software product called FortiOS 4.0 MR2. The infringement contentions, however, purport to cover both software and hardware devices manufactured by Fortinet.

FortiOS 4.0 MR2 is a software operating system. In all instances except one, FortiOS 4.0 MR2 (and other accused versions of the FortiOS operating system) is installed onto a hardware device such as a FortiGate device. The exception is FortiGate Virtual Applicances, which offers "virtualized" security services (*i.e.*, where the hardware portion is emulated by software). In all instances, the accused products contain both allegedly patented components and non-accused components.

Fortinet launched the first version of the FortiOS in 2002, and has released major and minor updates on a regular basis since then. The damages calculation period in this action runs from 2004 to 2012.

### 3. THE PENDING MOTIONS.

This order addresses three motions by Fortinet: a motion for summary judgment and motions to strike and exclude the expert reports and testimony of NPS's infringement expert Dr. Angelos Keromytis, and NPS's damages expert Mr. John Jarosz. This order follows full briefing and oral argument.

## ANALYSIS

### 1. FORTINET'S MOTION FOR SUMMARY JUDGMENT.

Fortinet moves for summary judgment on multiple grounds. As further explained below, the motion is **DENIED**.

#### A. CLAIM 29.

Claim 29 of the '601 patent is a means-plus-function claim. To prove infringement of a means-plus-function claim, a patentee must persuade a jury that the structure in the patent specification corresponding to each function is found in the accused product and performs the same function. *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211–12 (Fed. Cir. 1998).

Fortinet argues that NPS has not identified any specific algorithms in the accused products or the '601 patent that form the structure performing the disclosed functions of claim 29. This order disagrees. The basis of Fortinet's motion regarding claim 29 is a mystery. Casual perusal of the claim chart attached as Exhibit J to Dr. Keromytis' infringement report shows that Fortinet's contention is incorrect. The claim chart breaks each means limitation of claim 29 into a separate section. The sections begin by stating the claimed function and corresponding structure in the patent, followed by citations to specific figures, columns, and line numbers in the patent specification where that structure is disclosed. Each section then cites to Fortinet technical documents, deposition testimony, and source code that allegedly demonstrate the structure in the accused products.

Fortinet claims that NPS provides only attorney conclusions and a declaration attached to the summary judgment opposition (Dkt. 252 at 9). In light of the claim chart appended to the infringement expert report, Fortinet's contentions are incorrect. Summary judgment on this issue is **DENIED**.

3

### B. CLAIMS 10 AND 43.

Following the close of briefing on the instant motion, NPS abandoned its assertion of claims 10 and 43 in this action. This will constitute *res judicata* as to these claims.

### C. CLAIMS 19 AND 57.

Fortinet moves for summary judgment of non-infringement on claims 19 and 57 on the ground that the accused products do not practice a limitation. Specifically, both claims contain the following limitation: "a kernel of the operating system having been modified so that the operating system . . . cannot forward any communications packet." The parties disagree over the correct construction of the term "modified." The term was not raised by the parties or construed during the claim construction phase of this action.

Although the parties are entitled to a construction of all disputed and litigated claim terms before the jury is instructed, this order declines to construe the term at this time. After evidence is heard at trial, the judge will be in the best position to construe this term. Summary judgment on this issue is **DENIED**.

### D. INFRINGEMENT THEORIES FOR THE ACCUSED PRODUCTS.

Fortinet contends that NPS has failed to advance infringement theories for any products other than FortiOS 4.0 MR2 (*i.e.*, products or services sold in combination with FortiOS 4.0 MR2). Thus, Fortinet argues that summary judgment should be granted as to all of Fortinet's other products. This order disagrees.

NPS's complaint, infringement contentions, and expert reports all focus on the FortiOS 4.0 MR2 product. Fortinet's other accused products and services orbit around these core allegations and evidence. The issues, therefore, are (1) whether NPS's infringement contentions comply with the notice requirements in our patent local rules and (2) whether the allegations and evidence in the record are sufficient to allow the case to proceed to trial on *all* of the accused products.

It is notable that Fortinet itself has resorted to collective disclosures on invalidity and specifically regarding the so-called "Janus" refernce (Dkt. No. 191-3). Fortinet is trying to have

4

1  it both ways. Fortinet will not be allowed to insist on a higher standard of disclosure than the
2  standard it has used itself.

3  Apart from that, NPS contends that it was not obligated to provide 70+ separate claim
4  charts. Instead, it listed all of the accused products individually and used the FortiOS 4.0 MR2
5  product as a representative example. NPS says this satisfies the notice requirements under the
6  local patent rules. In support, NPS cites several decisions from this district where representative
7  infringement contentions were permitted. *See, e.g., Infineon Techs AG v. Volterra*
8  *Semiconductor*, No. 11-6239, 2013 U.S. Dist. LEXIS 109165, at *15–18 (N.D. Cal. July 8, 2013)
9  (Magistrate Judge Donna Ryu) (approving representative infringement contentions supported by
10 analysis and collecting cases). This order agrees that, when supported by adequate analysis
11 showing that the accused products share the same critical characteristics, representative
12 infringement contentions may suffice.

13 Fortinet cites *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311 (Fed. Cir. 2006), for the
14 proposition that a single product cannot be used as a stand-in for other products. Fortinet
15 misstates the holding of this decision. In *L & W*, the Federal Circuit concluded that an
16 infringement expert could not assume "without support" that one accused product was "typical"
17 of all the accused products. 471 F.3d at 1317–18. NPS's typicality showing was sufficient
18 under our local rules subject to proof at trial.

19 The next issue is whether, apart from the local rule disclosure, NPS has advanced
20 sufficient evidence to go to the jury to prove up typicality. NPS relies on a passing reference to
21 proxy processes in the deposition transcript of Fortinet's Rule 30(b)(6) witnesses, and five
22 paragraphs from Dr. Keromytis' infringement report. The report first states that "all versions of
23 the code literally infringe all of the elements of the asserted claims." The next three paragraphs
24 lump all of the accused products into three different time periods and discuss the technical
25 features used in each time period. The fifth paragraph provides excerpts from four Fortinet
26 engineering documents that allegedly establish that all the accused products all practice the
27 patented technology (Keromytis Rpt. ¶¶ 81–85).

28

5

This evidence and analysis by Dr. Keromytis does not analyze typicality for accused products other than FortiOS 4.0 MR2 on a element-by-element or product-by-product basis. Yet, Fortinet does not contend that NPS has failed to argue infringement on an element-by-element basis for the representative FortiOS 4.0 MR2 product. Although somewhat lacking in detail, Dr. Keromytis' report evinces an effort to analyze the relevant features of all the accused products. On its face, it does not show that Dr. Keromytis used a flawed methodology or made a set of impermissible assumptions.

Fortinet objects that "NPS cannot credibly assert that all FortiOS versions operate in the same manner" in light of admissions that FortiOS has also changed over time. Fortinet's logic on this point is flawed. It does not necessarily follow from these admissions that the FortiOS products changed in a manner relevant to the patent claims at issue. At the hearing, the Court asked Fortinet counsel to give an example of an earlier version of FortiOS that operated differently from FortiOS 4.0 MR2 insofar as the claim limitations were concerned. Fortinet counsel skillfully changed the subject and never answered the question.

Fortinet also objects that Dr. Keromytis' report does not identify which source code he reviewed in forming his expert opinions. The report *implies* that Dr. Keromytis reviewed all of the relevant source code, but does not specifically so state. The report also states that Dr. Keromytis relied on an assistant to review at least some of the source code. Whether Dr. Keromytis' implicit assertion and alleged comprehension of the source code are believable is a matter for the jury. Moreover, Dr. Keromytis relied on both source code and technical documentation in support of his opinion that the accused products are the same in all material respects. Exhaustive citation of source code is not necessary when equivalent information is available from other sources.

While the items advanced by NPS seem general and conclusory, it is exceedingly difficult in the haze and maze of this technology to say, as a matter of law, that NPS has not supplied enough evidence to persuade a jury that all of the operating versions worked like FortiOS 4.0 MR2 insofar as claim limitations are concerned. Accordingly, Fortinet's motion for summary judgment on this issue is **DENIED**. Be aware that at trial the evidence may come in (or

6

*not* come in) in a different way with a different record, particularly with the benefit of cross-examination, such that Fortinet may then prevail on a Rule 50 motion, notwithstanding its loss on this Rule 56 motion.

### 2. FORTINET'S MOTION TO STRIKE AND EXCLUDE THE EXPERT TESTIMONY OF DR. KEROMYTIS.

Fortinet raises numerous objections to the testimony and expert report of NPS's infringement expert Dr. Keromytis. Fortinet requests that his report be stricken and that he be precluded from testifying. The motion is **DENIED**.

Fortinet's motion for summary judgment (discussed above) regarding NPS's failure to address versions of the FortiOS software other than FortiOS 4.0 MR2 raises two key issues: (1) whether NPS complied with its discovery disclosure obligations under the patent local rules, and (2) whether NPS has carried its burden to adduce sufficient evidence of infringement, via the expert report of Dr. Keromytis and otherwise, for this action to proceed to trial on all of the accused products. Fortinet's motion to strike, in contrast, addresses the admissibility of Dr. Keromytis' expert opinions given the same failure to address specific versions of FortiOS other than FortiOS 4.0 MR2. Fortinet's numerous objections to Dr. Keromytis' report and testimony will now be analyzed in turn.

*First*, in parallel with its summary judgment motion Fortinet objects that Dr. Keromytis' report did not indicate which version(s) of the FortiOS source code it was based on. On this basis, Fortinet contends that the report should be stricken as methodologically flawed. This order disagrees. Standing alone, Dr. Keromytis' failure to cite particular versions of the FortiOS source code does not prove that Dr. Keromytis' methodology was flawed. Fortinet's argument presupposes that the source code for the accused products differs in ways that are relevant to the asserted claims. NPS and Dr. Keromytis, however, contend that the source code is functionally identical for all the accused products. If this is true, citing particular versions of the code would be unnecessary and redundant. The veracity of Dr. Keromytis' position shall be resolved at trial.

Fortinet's repeated citation to *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311 (Fed. Cir. 2006), is again misplaced. Fortinet contends that "Dr. Keromytis has simply assumed, without basis, that all versions of the accused products operate in the same manner as version 4.0 MR2"

7

1  (Dkt. No. 249 at 17). Unlike *L & W*, however, there is no *admission* in the present record that
2  Dr. Keromytis relied on any such assumptions. *See L & W*, 471 F.3d at 1316–18 (expert
3  reviewed "approximately all" of the accused products and provided conclusory analysis). To the
4  contrary, NPS maintains that "Dr. Keromytis inspected all versions of the source code [Fortinet]
5  produced."

6　　　*Second*, Fortinet similarly contends that Dr. Keromytis' testimony should be limited to
7  FortiOS MR2 because his report and accompanying claim charts were based on that product.
8  Again, Fortinet presumes (without showing) that the accused products differed in material
9  respects, which is a disputed issue of fact. It would be premature to limit or strike Dr.
10  Keromytis' testimony before this question is resolved. Fortinet's contention that NPS has shifted
11  the burden on infringement on this issue is also incorrect. NPS still carries the burden at trial to
12  prove that all of the accused products are functionally identical in all material respects.

13　　　*Third*, Fortinet argues the merits of whether the accused products have changed
14  materially over time, as well as the merits of how various deposition testimony relied on by NPS
15  should be interpreted. These merits questions shall be resolved at trial. They are not appropriate
16  to resolve on a motion to strike.

17　　　*Fourth*, Fortinet objects that source code for the accused products was also reviewed by
18  an assistant to Dr. Keromytis. Dr. Keromytis admitted this fact in his report, and further stated
19  that he relied on information provided by the assistant (Keromytis Rpt. ¶ 15). Fortinet provides
20  no authority that this methodology is improper as a matter of law and this order will not so hold.
21  If, as NPS contends, it is proven that all of the accused products function identically with respect
22  to the asserted patent claims, it might not be necessary for one individual to inspect 73 products'
23  worth of source code. On the other hand, factors that are not apparent in the current record could
24  render Dr. Keromytis' use of an assistant problematic. These issues are proper topics for cross-
25  examination.

26　　　*Fifth*, Fortinet objects that Dr. Keromytis never personally operated any of the accused
27  products in an infringing manner. Again, Fortinet provides no authority that this fact renders Dr.
28  Keromytis' analysis flawed as a matter of law. It is undisputed that Dr. Keromytis reviewed at

least some source code for the accused products, technical documentation, and the deposition transcripts of Fortinet's Rule 30(b)(6) witness. And, on the present record, it cannot be determined whether Dr. Keromytis' review overlooked any particular accused product(s).

*Sixth*, Fortinet objects that Dr. Keromytis was unable to recall at his deposition which specific version numbers of the FortiOS source code he reviewed. He also could not recall the FortiOS file names. The extent to which Dr. Keroymytis' memory failures at his *deposition* affect his credibility as an expert is an issue for the jury to consider. It does not necessarily mean that the analysis in his *report* was flawed.

Finally, Fortinet's motion takes issue with Dr. Keromytis' discussion of EO Johnson and Qdoba customer configuration files. This order notes that NPS has withdrawn its indirect infringement claims and further stated that it does not intend to rely on the EO Johnson and Qdoba evidence for that purpose. If Dr. Keromytis testifies regarding the EO Johnson and Qdoba files at trial for some other purpose, the admissibility of the evidence may be raised at that time.

For the foregoing reasons, Fortinet's motion to strike and exclude the testimony of Dr. Keromytis is **DENIED**.

**3. FORTINET'S MOTION TO STRIKE THE EXPERT REPORT AND TESTIMONY OF EXPERT JOHN JAROSZ.**

Fortinet objects to the report and testimony of NPS's damages expert John Jarosz on multiple grounds. It is only necessary to address one of them here. Fortinet contends that Mr. Jarosz's damages analysis improperly based royalties on the entire market value of the accused products. This order agrees. Because this flaw is integral to Mr. Jarosz's analysis, the report and Mr. Jarosz's opinion must be excluded in their entirety.

"When a patentee seeks damages on unpatented components sold with a patented apparatus, courts have applied a formulation known as the 'entire market value rule' to determine whether such components should be included in the damage computation, whether for reasonable royalty or for lost profits purposes." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995).

9

The entire market value rule — which has varied somewhat in formulation over time — has been a highly-criticized and highly-litigated methodology. In recent years, the Federal Circuit has restricted its use, most notably in *LaserDynamics v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). In that action, the Federal Circuit explained it as follows (per Judge Jimmie Reyna):

> Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product. Thus, it is *generally required* that royalties be based *not* on the entire product, *but instead on the smallest salable patent-practicing unit*.
>
> The entire market value rule is a *narrow exception* to this general rule. If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product. The entire market value rule is derived from Supreme Court precedent requiring that "the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." The Court explained that "the entire value of the whole machine, as a marketable article, [must be] properly and legally attributable to the patented feature."

694 F.3d at 67 (emphasis added, citations and quotation marks omitted). Notwithstanding the high bar set on the use of the entire market value of an accused, multi-component product, Mr. Jarosz's damages report used this very method in his calculation of a reasonable royalty for the alleged infringement of the '601 patent.

Mr. Jarosz did not admit that he used the entire market value rule in his report. Instead, based on sales data and deposition testimony, Mr. Jarosz first determined that the FortiOS software was not sold separately from its hardware (or virtual machine) 'chassis.' The "smallest salable units," therefore, were the accused Fortinet products (though they contain substantial non-accused components). Mr. Jarosz then stated: "Accordingly, when evaluating the quantitative evidence discussed below, I have used as the royalty base the price of the accused Fortinet hardware product or virtual machine that utilizes the FortiOS operating system" (Jarosz Rpt. at 35–36). His analysis was therefore based on the entire market value of the overall unit.

10

1       Mr. Jarosz then looked at different measures of the contribution the accused features
2  made to the whole accused products. For example, Mr. Jarosz attempted to quantify the
3  percentage of users who relied on the accused features and arrived at a rough estimate of fifty
4  percent. He attempted to calculate the effects on Fortinet's revenue if the accused features were
5  disabled in its products between 2004 and 2012. He also considered the *Georgia Pacific* factor
6  concerning the "profit credited to the invention as distinguished from non-patentable elements"
7  and concluded that the non-accused features exerted "substantial . . . downward pressure" on the
8  royalty calculation. He ended up with a running royalty rate of four percent of sales of the
9  accused products (*id*. at 62–64, 75–77).

10      This order agrees with Fortinet that NPS has failed to provide sufficient evidence that the
11 patented features drive demand for any Fortinet product, much less for all 70+ products.
12 Therefore, use of the entire market value rule will not be allowed.

13      NPS replies that Mr. Jarosz "correctly performed the apportionment analysis required by
14 the Federal Circuit by first ascertaining the smallest salable patent-practicing unit, and then
15 analyzing the proportion of product value derived from the allegedly infringing technology"
16 (Dkt. No. 261 at 5). Analytically, this statement is incomplete. When using a multi-component
17 product as a royalty base, even if it is the smallest salable unit, a patentee must *still show* that the
18 patented feature drives demand for the entire product.

19      *LaserDynamics* is controlling. There, the patented technology permitted an optical disk
20 drive (ODD) to automatically distinguish between the type of disk inserted in the drive — for
21 example, whether the disk was CD or a DVD. Since Quanta did not sell ODDs, the plaintiff
22 LaserDynamics argued that the smallest salable units were defendant's laptop computers. The
23 district court granted a new trial on the ground that the LaserDynamics' damages expert
24 improperly relied on the entire market value of the accused product. On appeal, LaserDynamics
25 argued that, given the lack of reliable information about the price of the ODD component,
26 practical necessity compelled using the laptop as a royalty base. The Federal Circuit disagreed,
27 stating:

28          LaserDynamics' necessity argument also fails to address the
            fundamental concern of the entire market value rule, since

11

> permitting LaserDynamics to use a laptop computer royalty base does not ensure that the royalty rate applied thereto does not overreach and encompass components not covered by the patent. That is, if difficulty in precisely identifying the value of the ODDs is what justifies using complete laptop computers as the royalty base, when it comes time to then apportion a royalty rate that accounts for the ODD contribution only, *the exceedingly difficult and error-prone task* of discerning the ODD's value relative to all other components in the laptop remains.

*LaserDynamics*, 694 F.3d at 56, 60 (emphasis added).

Substantial risk of calculation error and impermissible speculation are not the only concerns addressed by the entire market value rule. The rule also prevents the creation of unfair jury prejudice:

> Regardless of the chosen royalty rate, one way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only. In *Uniloc*, we observed that such disclosure to the jury of the overall product revenues "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Id.* at 1320 (noting that "the $19 billion cat was never put back into the bag," and that neither cross-examination nor a curative jury instruction could have offset the resulting unfair prejudice). Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is "adequate to compensate for the infringement." *Id.*; *see* 35 U.S.C. § 284.

*LaserDynamics*, 694 F.3d at 68, *citing Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011).

NPS's reliance on *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), is misplaced. NPS contends that *Lucent* stands for the proposition that using the entire market value of a multi-component product is permissible "as long as the proportion of the product represented by the infringing feature is taken into account" (Dkt. No. 261 at 5). Yet, in *LaserDynamics* the Federal Circuit used the *Lucent* fact pattern as an example of the high bar set by the entire market value rule:

> [In *Lucent*], the patent at issue involved a helpful and convenient "date picker" feature that was being used within the grand scheme of Microsoft's Outlook email software. We held that because the patented feature was "but a tiny feature of one part of a much

12

> larger software program," a royalty could not be properly calculated based on the value of the entire Outlook program because "there was no evidence that anybody anywhere at any time ever bought Outlook . . . *because* it had [the patented] date picker."

*LaserDynamics*, 694 F.3d at 68–69 (emphasis in original).

Here, NPS contends that because the accused products are the smallest salable unit, Mr. Jarosz "permissibly used the market value for the entirety of each Fortinet product that infringes . . . taking into account the proportion of the product represented by the allegedly infringing technology." Applying *LaserDynamics* to the summary judgment record, this order disagrees.

Mr. Jarosz concluded in his report that the "patent in suit either directly or indirectly drives demand for products running the FortiOS operating system." "Indirectly" is not good enough. And, Mr. Jarosz also admitted that "product attributes enabled by the patented technology are not the only drivers of demand for the accused products." Mr. Jarosz further admitted that the accused Fortinet products contain numerous, valuable unpatented features, and that not all customers use the accused products in an infringing manner — *i.e.*, for some users, the accused features are not even *significant* (Jarosz Rpt. at 24–25, 62, 75–76). Accepting these admissions as true, it cannot be the case that the accused features drive demand for the accused products within the meaning of *LaserDynamics*. *Put differently, NPS has not shown (and a jury could not reasonably find on this record) that the patented components drive demand for any accused products.* Using the accused products as a royalty base therefore raises the same specter of error and jury prejudice as in *LaserDynamics* and runs afoul of the entire market value rule. Under a straightforward application of *LaserDynamics*, Mr. Jarosz's analysis cannot be presented to the jury.

This leaves the follow-on question of whether NPS should be permitted an opportunity to have a second bite at the apple. Over the course of many years and more than a dozen patent trials, the undersigned judge has concluded that giving a second bite simply encourages overreaching on the first bite (by both sides). A second bite may be appropriate where the expert report can be salvaged with minimal disruption to an orderly trial, but where the report is not even close, there is a positive need to deny a second bite in order to encourage candor in the first

place. To this must be added the fact that the trial date is only four days away and the parties and the Court have built their calendars around that date. To start over with a new royalty analysis would impose prejudice on the defense as well and disrupt the Court's calendar, which is burdened with other trials set far into the future. Possibly, plaintiff can cobble together a royalty case based on other disclosed witnesses and evidence. Possibly not. If not, it is a problem clearly of plaintiff's own overreaching and it will not be allowed a second bite at the apple.

## CONCLUSION

Fortinet's motion for summary judgment is **DENIED**. Fortinet's motion to strike the expert report and exclude the testimony of Dr. Keromytis is **DENIED**. Fortinet's motion to strike the expert report and exclude the testimony of Mr. Jarosz is **GRANTED**. Fortinet's related requests for evidentiary hearings on the motions to strike are **DENIED**.

**IT IS SO ORDERED.**

Dated: September 26, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE